**IDEAL TOY CORPORATION**

v.

**PLAWNER TOY MFG. CORP.,**
**Appellant.**

**No. 81–3119.**

United States Court of Appeals,
Third Circuit.

Argued June 16, 1982.
Decided July 26, 1982.

Carella, Byrne, Bain & Gilfillan, Franklyn C. Steinberg, III, Newark, N. J., on the brief, for appellant; John N. Bain, Newark, N. J. (argued), of counsel.

Curtis, Morris & Safford, P. C., New York City, for appellee; Lewis H. Eslinger, New York City (argued), Pasquale A. Razzano, Richard M. Goldberg, Dickerson M. Downing, James A. Finder, New York City, of counsel.

Before ALDISERT, GIBBONS, and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The major question for decision in this appeal from a preliminary injunction order barring a toy distributor from marketing a puzzle allegedly infringing upon the trademark rights of a competitor is whether the district court's order is sufficiently specific to give the parties fair notice of the conduct prohibited. A threshold issue is whether the district court erred in granting the preliminary injunction. We decide that the preliminary injunction was properly entered, but we will amend the language of the order. We affirm the judgment of the district court as modified.

### I.

Pursuant to an exclusive arrangement with the Hungarian inventor, Erno Rubik, appellee Ideal Toy Corporation distributes the "Rubik's Cube" puzzle. Ideal packages its puzzle in a clear plastic cylinder that is sealed to a black plastic base by a strip of black and gold tape displaying the legend "Rubik's Cube." The cube itself is composed of 26 smaller cubes presenting a total of 54 faces colored with six primary colors —red, blue, green, yellow, orange, and white—on a black gridwork. When sold, the cube is aligned to present six monochromatic faces, the "start position." Ideal holds no patent rights to Rubik's Cube. Appellant Plawner Toy Manufacturing Corporation imports and distributes an identical cube which it calls the "Wonderful Puzzler" and sells in packaging identical to Ideal's, except for the lettering on the tape strip which reads "Wonderful Puzzler" instead of "Rubik's Cube." Unlike Ideal, Plawner sells its cube puzzle in a variety of sizes and configurations.

Seeking to enjoin distribution of the Wonderful Puzzler, Ideal sued Plawner in the district court claiming unfair competition and common law trademark infringement under New Jersey law, appending these claims to a complaint that Plawner had violated § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[1] Specifically, Ideal al-

1. Section 43(a) of the Lanham Act provides, in relevant part:

Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to

leged that Plawner had, without consent, imitated the packaging and trade dress[2] of Rubik's Cube so as to confuse the public and to palm off Plawner's product as Ideal's. Pending resolution of these claims, Ideal moved for a preliminary injunction. The district court found, *inter alia*, that Ideal was likely to prevail on the merits of its claims, and it granted the preliminary injunction.[3] Plawner appeals, invoking our jurisdiction under 28 U.S.C. § 1292(a)(1).

## II.

### A.

In *SK&F, Co. v. Premo Pharmaceutical Laboratories*, 625 F.2d 1055, 1066 (3d Cir. 1980), we set forth the limitations of our review:

> [T]he scope of our review of a trial court's discretionary ruling on an application for preliminary injunctive relief is narrow.

Unless the trial court abuses [its] discretion, commits an obvious error in applying the law, or makes a serious mistake in considering the proof, the appellate court must take the judgment of the trial court as presumptively correct.

*A. O. Smith Corp. v. FTC*, 530 F.2d 515, 525 (3d Cir. 1976). Moreover, the burden on an appellant seeking reversal of a trial court's determination on an application for a preliminary injunction is a heavy one. *Oburn v. Shapp*, 521 F.2d 142, 147 (3d Cir. 1975); *Scooper Dooper, Inc. v. Kraftco Corp.*, 460 F.2d 1204, 1205 (3d Cir. 1972) (per curiam).

We turn now to appellant's principal contentions.

### B.

■ Plawner accuses Ideal of attempting to circumvent its lack of a patent monopoly by using trademark law as a device to se-

---

describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action ... by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

The district court correctly concluded that the federal and state claims involved essentially the same elements, *see SK&F, Co. v. Premo Pharmaceutical Laboratories*, 625 F.2d 1055, 1065–66 (3d Cir. 1980) (applying New Jersey law), but it focused on the Lanham Act claim.

2. Although historically trade dress infringement consisted of copying a product's packaging, the parties and the district court used the term "trade dress" in its more modern sense to refer to the appearance of the Rubik's Cube itself as well as its packaging, and we will do the same. *See* Note, *The Problem of Functional Features: Trade Dress Infringement Under Section 43(a) of the Lanham Act*, 82 Colum.L. Rev. 77, 79 (1982).

3. At oral argument counsel for the appellee emphasized precisely that which it sought to be protected:

> The trademark consists of the specific monochromatic colors, the six different colors in combination with a black grid pattern.

> The grid pattern is formed by applying substantially rectangular patches to the individual little "cubies," the patches being of a sufficiently smaller size to permit of a grid background. That grid background is black.
> In addition, the trademark consists of substantially square patches. So the trademark consists not only of the monochromatic colors, it consists of the grid background and the particular configuration of those patches.

Transcript of oral argument at 12. The district court, obviously acting under the severe time constraints of a preliminary hearing, did not describe the trademark with such specificity; rather, its description was extremely Spartan:

> Ideal's cube is manufactured in black, and brightly colored adhesive squares are applied to the small cubicles. Each adhesive square is slightly smaller than the cubicle to which it is affixed, and the result is a black border around each colored square. Ideal uses six colors, and the cube is presented for sale with each face bearing a distinct color.

*Ideal Toy Corp. v. Plawner Toy Mfg. Corp.*, Civ. No. 81–1431 (D.N.J. Oct. 21, 1981), *reprinted in* app. at 204a, 205a. Although the specific colors were displayed in a color photograph attached as an exhibit to its order, we shall assume for purposes of our limited review that the court was accepting the description of the trade dress offered by the appellee. We specifically reserve for the district court at the final hearing the determination of the specifics of the trademark sought to be protected.

cure equivalent insulation from competition. Plawner relies on *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), and its companion, *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), in which the Supreme Court held that state laws of unfair competition may not be used to impose liability for copying an unpatented product and thereby effectively to produce a perpetual patent. Because of the strong policy against affording this equivalent protection, Plawner contends that the district court should have required Ideal to demonstrate likelihood of success on the merits by clear and convincing evidence.

This argument need not long detain us. We examined the effect of the intersection of federal patent law and state trademark law in *SK&F*, noting that although the Supreme Court held that state unfair competition laws must accommodate federal patent law policies, it recognized and did not disturb the states' power to prevent consumers from being misled as to the source of a product. 625 F.2d at 1064 (citing *Sears*, 376 U.S. at 232, 84 S.Ct. at 789). Thus, even after *Sears* and *Compco*, an element of a product cannot be afforded trademark protection if it is functional, *see Keene Corp. v. Paraflex Industries*, 653 F.2d 822, 824 (3d Cir. 1981), but where the infringed design element is non-functional, *i.e.*, "[w]hen the design itself is not significantly related to the utilitarian function of the product, but is merely arbitrary, then it is entitled to protection as a design trademark if it has acquired the distinctiveness necessary to achieve a secondary meaning," *id.* at 825. *Sears* and *Compco* do not preclude a court from affording protection from infringement of a design element that has achieved secondary meaning and is non-functional, notwithstanding the absence of a patent. Those decisions may limit the number and scope of the situations in which state trademark law protection will be available, but they do not diminish the level of protection available to those plaintiffs

for whom the state trademark laws retain protective power, and they do not affect the quantum of evidence that is prerequisite to protection.

## C.

■ We turn now to appellant's contentions that the district court erred in determining non-functionality. The Supreme Court has recently reminded us that, in general, a product feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article. *Inwood Laboratories v. Ives Laboratories*, —— U.S. ——, —— n. 10, 102 S.Ct. 2182, 2186 n. 10, 72 L.Ed.2d 606 (1982). This formulation is congruent with our recent statement that a feature of goods is considered non-functional if "the element of the product serves no purpose other than identification." *SK&F*, 625 F.2d at 1063.

■ The district court acknowledged that some distinctive marks are necessary to differentiate the faces of the cube, but it found that "given the wide variety of possible marks, the actual colors and patches used are non-functional." *Ideal Toy Corp. v. Plawner Toy Mfg. Corp.*, Civ. No. 81–1431 (D.N.J. Oct. 21, 1981), *reprinted* in app. at 204a, 207a. In other words, the district court effectively found that the particular colors used in Ideal's puzzle serve "no purpose other than identification." The court found that if the colors are non-functional, it would follow that the start position, too, is non-functional: "Any designation which would enable the user to return to a given starting point would suffice. By its very nature, to satisfactorily complete the puzzle, one must end where one has begun." *Id.* at 208a. The court also found the packaging to be "almost incidental" and therefore non-functional. Within the narrow limits of our review of a preliminary injunction, we conclude that the district court did not err when it found the Rubik's Cube packaging and trade dress non-functional.[4]

---

4. Plawner directs our attention to our statement in *Keene Corp. v. Paraflex Indus.* that

"merely because there are other shapes and designs 'which defendant could use and still

### D.

Ideal was also required to demonstrate that secondary meaning had attached to these elements. "To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Inwood Laboratories*, —— U.S. at —— n.11, 102 S.Ct. at 2186 n.11. When the primary significance of the trade dress to a consumer is in designating not the product but its producer, the trade dress has acquired secondary meaning. *Alfred Dunhill of London, Inc. v. Kasser Distillers Products Corp.*, 350 F.Supp. 1341, 1359 (E.D.Pa.1972), *aff'd mem.*, 480 F.2d 917 (3d Cir. 1973). In testing secondary meaning, the court may consider factors such as length of use, buyer association, extent of sales and advertising, and the fact of copying. *Faberge, Inc. v. Saxony Products, Inc.*, 605 F.2d 426, 428 (9th Cir. 1979); *Locatelli, Inc. v. Tomaiuoli*, 129 F.Supp. 630, 634 (D.N.J.1955).

That there has been extensive copying of Rubik's Cube was demonstrated by an admission made by appellant's counsel at the hearing on the preliminary injunction:

> So in answer to the question that started this whole dissertation, yes, [defendant's cube puzzle is] a "knockoff" [of Ideal's Rubik's Cube puzzle], the same size, same shape, same colors. There's no doubt about that. And the law gives me the right to do that because it's a hot selling thing.

Transcript at 40. Although this admission of copying is itself persuasive evidence of secondary meaning, Ideal proffered other circumstantial evidence that the public associated the appearance of the cube with Ideal's product: that it had directed public attention to the trade dress via almost two million dollars worth of advertising; that Ideal had used the trade dress and package design for approximately one year; and that its puzzle was highly successful, achieving over five million unit sales in that brief period. Ideal also established the existence of consumer confusion, as conceded by Plawner's attorney at the hearing:

> THE COURT: If someone went into a store and said to the store owner, "give me Rubik's Cube," and they handed them the defendant's product, is there any question in your mind that the customer would think that he was getting what he asked for?
>
> COUNSEL FOR PLAWNER: No question in my mind.

Transcript at 33. Moreover, Ideal demonstrated that unauthorized imitations of Rubik's Cube were mistakingly returned to Ideal for repair, and it introduced results of a consumer survey in which 40 per cent of the respondents mistakenly identified a Rubik's Cube imitation identical to Plawner's as a Rubik's Cube puzzle. There was no error in the district court's finding that the trade dress of Ideal's cube has achieved secondary meaning. Because we conclude that the district court neither erred nor

produce a workable' product, the design used is not thereby non-functional." 653 F.2d 822, 827 (3d Cir. 1981) (quoting *Vaughan Novelty Mfg. Co. v. G. G. Greene Mfg. Co.*, 202 F.2d 172, 175 n.10 (3d Cir.), *cert. denied*, 346 U.S. 820, 74 S.Ct. 34, 98 L.Ed. 346 (1953)). Plawner's reliance on *Keene* is misplaced. In that case we considered "aesthetic functionality"—specifically, the design of a luminaire whose architectural compatibility was intricately related to its function and was not merely an element of trade dress. In affirming the district court's conclusion that the design was functional, we noted its finding that there were "only a limited number of configurations or designs for a luminaire which are architecturally compatible with the type of structures on which they are placed," 653 F.2d at 827, and accordingly we

held not clearly erroneous the trial court's finding that competition would be stifled were the plaintiff to be given the exclusive right to its design, *id.* By contrast, this case presents no issue of aesthetic functionality. Moreover, the district court—having been presented with exhibits showing various manufacturers' cube puzzle versions marked with numbers, domino designs, and pictures of fruit—observed that there are a "wide variety" of colors, shapes, and markings which could be used to differentiate the faces of a cube puzzle. Therefore, the concern for competition that we expressed in *Keene* does not extend to the circumstances of this case in which the possible trade dress variations are limited only by the designers' imaginations.

abused its discretion in determining that Ideal was likely to succeed on the merits, we hold that the motion for preliminary injunction was properly granted.

### III.

We turn now to Plawner's contention that the order of preliminary injunction entered by the district court fails to provide it fair notice of the conduct that the court intended to prohibit. The district court preliminarily enjoined appellant from in any manner, directly or indirectly

(i) imitating, copying, counterfeiting or making unauthorized use of plaintiff's distinctive trademarks, packaging, trade dress, style and labeling for plaintiff's "RUBIK'S CUBE" puzzles, a specimen of which is shown in the photograph attached hereto as Exhibit 2;

(ii) manufacturing, producing, distributing, circulating, selling, offering for sale, moving, or otherwise disposing of, advertising, promoting or displaying any product bearing any simulation, reproduction, counterfeit, copy or colorable imitation of plaintiff's distinctive trademarks, packaging, trade dress, style and labeling for plaintiff's "RUBIK'S CUBE" puzzles as shown in Exhibit 2;

(iii) using any simulation, reproduction, counterfeit, copy or colorable imitation of plaintiff's distinctive trade dress, packaging, style or labeling for plaintiff's "RUBIK'S CUBE" puzzles in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any product in any such fashion as to relate or connect, or tend to relate or connect any products in any way to plaintiff or to any goods sold, manufactured, sponsored or approved by, or connected with plaintiff;

(iv) using any false designation of origin or false description (including, without limitation, any packaging, letters, colors or symbols), which can, or is likely to, lead the trade or public, or individual members thereof, to believe that any product manufactured, distributed or sold by the defendant is in any manner associated or connected with plaintiff's "RUBIK'S CUBE" puzzle;

(v) engaging in any other activity constituting an infringement of plaintiff's trademarks, or of plaintiff's rights in, or to use or to exploit, its trademarks, packaging design, trade dress and style for plaintiff's "RUBIK'S CUBE" puzzle as shown in Exhibit 2;

(vi) selling, distributing, offering for sale, advertising, promoting or displaying "Wonderful Puzzler" puzzles of the type shown in Exhibit 1 or any colorable imitations thereof . . . .

App. at 6a–7a.

 Plawner argues that the language of this order fails to provide it with a reasonable notice of what the court will consider to be proscribed conduct. We agree. The order unreasonably requires the parties to guess at the kinds of conduct that will be deemed infringement. Fed.R.Civ.P. 65(d) provides in pertinent part:

Every order granting an injunction . . . shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained . . . .

The specificity requirements of Rule 65(d) are based on three considerations: "to prevent uncertainty and confusion on the part of those faced with injunctive orders, . . . to avoid the possible founding of a contempt citation on a decree too vague to be understood . . . [and] for an appellate tribunal to know precisely what it is reviewing." *Schmidt v. Lessard*, 414 U.S. 473, 476–77, 94 S.Ct. 713, 715–716, 38 L.Ed.2d 661 (1974) (per curiam). The degree of particularity required depends on the nature of the subject matter. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191–92, 69 S.Ct. 497, 499–500, 93 L.Ed. 599 (1949) (decrees of generality are often necessary to prevent further violations where a proclivity for unlawful conduct has been shown); *American Home Prods. Corp. v. Johnson & Johnson*, 577 F.2d 160, 171 (2d Cir. 1978); *Pacific Maritime Ass'n v. International Longshoremen's & Warehousemen's Union*, 517 F.2d 1158, 1162

(9th Cir. 1975). While preliminary injunctions are intended to meet exigent circumstances and at times may lack the precision of final decrees, *Johnson v. Radford*, 449 F.2d 115, 117 (5th Cir. 1971) (per curiam), the person enjoined must nevertheless "receive fair and precisely drawn notice of what the injunction actually prohibits." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 444, 94 S.Ct. 1113, 1126, 39 L.Ed.2d 435 (1974).

The general precepts relating to trademarks are well known:

The redress that is accorded in trademark cases is based upon the party's right to be protected in the good-will of a trade or business. The primary and proper function of a trade-mark is to identify the origin or ownership of the article to which it is affixed. Where a party has been in the habit of labeling his goods with a distinctive mark, so that purchasers recognize goods thus marked as being of his production, others are debarred from applying the same mark to goods of the same description, because to do so would in effect represent their goods to be of his production and would tend to deprive him of the profit he might make through the sale of the goods which the purchaser intended to buy. Courts afford redress or relief upon the ground that a party has a valuable interest in the good-will of his trade or business, and in the trade-marks adopted to maintain and extend it. The essence of the wrong consists in the sale of the goods of one manufacturer or vendor for those of another.

*Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 412–13, 36 S.Ct. 357, 360, 60 L.Ed. 713 (1916). Because the protection afforded by patent law is unavailable to Ideal, judicial protection must be limited to the physical appearance of Rubik's Cube insofar as the public has identified the article with the appellee. The object of redress is to prevent confusion in the market place and prevent others from unfairly taking advantage of the good will that Ideal has earned for its product. The injunctive decree must be broad enough to protect the plaintiff, yet sufficiently narrow to avoid affording undeserved patent protection, and to permit the defendant to participate in activity outside the intended scope of the injunction. Because the injunction issued fails to meet these tests, the first operative portion of the injunction will be modified as follows:

A. ORDERED, that for the purpose of this preliminary injunction only and without intending that this be a final adjudication, the plaintiff's trade dress is described as cubes, each cube face made up of nine small cube faces that have specific monochromatic colors and a dark grid background; the grid pattern is formed by applying substantially rectangular patches of the monochromatic colors of red, blue, green, yellow, orange, and white to individual small cubes, the size of the color patches being sufficiently smaller than the faces of the small cubes to permit the display of a dark grid background, the cubes are packaged in a transparent plastic container on a black base. The trade dress is shown in EXHIBIT 2 of this order.

B. It is further ORDERED, that pending final hearing and determination of this cause, the defendant and its officers, agents, servants, employees, and all other persons acting in concert or participation with it or on its behalf, are hereby preliminarily enjoined, from in any manner, directly or indirectly;

(Subparagraphs (i) and (ii) are deleted.)

(iii) using any simulation, reproduction, counterfeit, copy, or colorable imitation of plaintiff's distinctive trade dress as described in paragraph A of this order, in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any cube puzzle product;

(Subparagraphs (iv) and (v) are deleted.)

(vi) selling, distributing, offering for sale, advertising, promoting or displaying "Wonderful Puzzler," containing the trade dress defined in paragraph A of this order and shown on EXHIBIT 1 of this order;

(vii) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (iii) and (vi) above,

In all other respects the order of preliminary injunction will be affirmed.

## IV.

The judgment of the district court, as modified by the foregoing, will be affirmed.

Each party will pay its own costs.