807 F.2d 1136
 1 U.S.P.Q.2d 1001
 AMERICAN GREETINGS CORPORATION and CPG Products, Inc.
v.
DAN-DEE IMPORTS, INC., Daniel Ranzman and Lee Capozzi (Two Cases).
Appeal of DAN-DEE IMPORTS, INC., Daniel Ranzman and Lee Capozzi.
Appeal of AMERICAN GREETINGS CORPORATION and CPG Products Corp.
 Nos. 86-5018, 86-5035.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 19, 1986.
Decided Dec. 2, 1986.
 
 Carol F. Simkin, (argued), Cowan, Liebowitz & Latman, New York City, Ronald Gould, Shanley & Fisher, Morristown, N.J., for plaintiffs-appellees-cross-appellant.
 Jesse Rothstein, (argued), Joel E. Lutzker, Amster, Rothstein & Ebenstein, New York City, Robert Alvin Adler, Simon & Allen, Newark, N.J., for defendants-appellants-cross-appellee.
 Before ADAMS and STAPLETON, Circuit Judges, and VAN DUSEN, Senior Circuit Judge.
 OPINION OF THE COURT
 STAPLETON, Circuit Judge:
 
 I.
 
 1
 American Greetings Corporation (American) and CPG Products Corporation (CPG) are co-venturers in the enormously successful Care Bears line of plush stuffed animals. The Care Bears themselves are pastel-colored plush teddy bears marked by pictorial designs on their white stomachs, i.e., "tummy graphics." American and CPG filed suit against Dan-Dee Imports, Inc. (Dan-Dee), a toy producer, alleging that Dan-Dee's distribution of various pastel-colored plush teddy bears also bearing tummy graphics infringed plaintiffs' rights in their Care Bears. The complaint asserted that Dan-Dee's conduct constituted copyright infringement, a false designation of origin under section 43(a) of the Lanham Act, 15 U.S.C. Sec. 1125(a), and unfair competition under common law.
 
 
 2
 A preliminary injunction issued on November 29, 1983, ordering Dan-Dee to stop selling "stuffed toy teddy bears" between 6 and 24 inches in height, having "a body and head of a pastel color, with a generally white chest and stomach region," and having "an applied decoration on the chest and/or stomach in the form of a graphic design consisting of one or more of a rainbow, a moon, a star, a cloud, a flower, a sun, a birthday cake, a heart, a clover or any other graphic designs likely to be confused therewith." This foreclosed Dan-Dee from continuing to market its "Goodtime Gang" line of teddy bears.
 
 
 3
 On August 15, 1984, American and CPG moved to hold Dan-Dee in contempt of the injunction for the distribution of various stuffed animals, including non-bear animals identified by Dan-Dee as the "New Goodtime Gang" line, and to amend the injunction to cover such toys. In a consent order filed September 14, 1984, Dan-Dee agreed not to distribute such toys until a hearing was held on plaintiffs' motion. On November 19, 1984, Dan-Dee moved to vacate or narrow the November 29, 1983 injunction.
 
 
 4
 Starting in December 1984, the district court held six days of hearings on the parties' motions. To establish a right to protection for their teddy bear under the Lanham Act, American and CPG asserted that "Care Bears have the following distinctive elements: 1. pastel coloration; 2. an inverted triangular 'jowly' shaped head; 3. heart-shaped paw pads; 4. a pear-shaped body; 5. an oval-domed shaped abdominal area; 6. a heart-shaped nose; 7. a tuft of hair atop the head; 8. a white plush abdominal area; and 9. tummy graphics." American Greetings Corp. v. Dan-Dee Imports, 619 F.Supp. 1204, 1209 (D.N.J.1985). To support their claim that Care Bears had acquired secondary meaning, American and CPG introduced extensive evidence regarding their promotion of the Care Bears concept. They further contended that Dan-Dee was violating the Lanham Act by distributing products incorporating some of the above-described distinctive features in a manner likely to cause consumer confusion as to source. Dan-Dee, on the other hand, pointed to various differences between the competing products as suggesting a likely lack of confusion, id. at 1214-15, and further asserted that all the features common to the two lines of products were functional and thus copyable.
 
 
 5
 In its Opinion of October 2, 1985, the district court found that "[t]he most prominent of [the Care Bears'] distinctive features is the tummy graphic," which is "affixed not only to identify the animal as a Care Bear, but to connote the particular personality and/or emotion associated with each Care Bear character." Id. at 1209. Emphasizing that tummy graphics were designed "to convey an emotional message," the district court agreed with Dan-Dee's position that tummy graphics were functional and thus unprotected. Id. at 1219. The court further found that the particular symbols used by plaintiffs as tummy graphics and the placement of the tummy graphic against a white background on the stuffed animal's stomach were functional. Id.
 
 
 6
 Nonetheless, the district court found the Care Bears' overall appearance to be protectible. The court phrased the issue thusly:
 
 
 7
 Other, particular features of plaintiffs' product might also be separated from the whole and found to be functional. To so analyze these products would, however, ignore the problem presented by this case. For, irrespective of the functional nature of any number of the features of plaintiffs' product, their combination, in a particular form, is not functional.
 
 
 8
 Id. at 1220. The court further noted that, even if every feature of plaintiffs' product were functional, Dan-Dee would be required to take reasonable steps to distinguish its product from plaintiffs' product. Id. The court concluded that the Lanham Act proscribes "defendants' copying of plaintiffs' product in full: defendants' products could and should have been designed to minimize confusion with plaintiffs' products, by altering non-functional elements of their stuffed animals, or combining functional elements in a different manner." Id.
 
 
 9
 Further finding that the Care Bears' overall appearance had acquired significant secondary meaning, id. at 1221 & n. 2, and that, because of similar overall appearances,[1] "defendants' products, both bears and other species, are likely to be confused with plaintiffs' pre-existing Care Bear products" by the consuming public, id. at 1224, the district court concluded that American and CPG were likely to prevail in showing that Dan-Dee's conduct violated the Lanham Act Sec. 43(a).
 
 
 10
 In an order filed December 4, 1985, the district court denied defendants' motion to vacate the injunction and granted plaintiffs' motion to amend the injunction to cover plush stuffed animals other than teddy bears. Although the district court based the grant of relief on Dan-Dee's infringement of plaintiffs' rights in their pre-existing Care Bears, the court's injunction order granted protection to the overall appearance of both the Care Bears and the subsequently introduced Care Bear Cousins, which are non-bear stuffed animals "tied to the Care Bear family by the presence of many of the same distinctive design features, including the prominent use of tummy graphics." Id. at 1213. The district court declined to find Dan-Dee in contempt of the November 29, 1983 injunction for marketing plush toy animals other than bears with tummy graphics. The district court did, however, hold Dan-Dee in contempt of that injunction for distributing a teddy bear with tummy graphics and in contempt of the September 14, 1984 consent order for marketing a plush dog with tummy graphics. This timely appeal and cross-appeal followed.
 
 
 11
 Because the preliminary injunction as amended does not give Dan-Dee adequate notice of what it is prohibited from doing and because it may, in practical effect, foreclose Dan-Dee from utilizing tummy graphics, a feature found by the district court to be functional, we vacate the preliminary injunction portion of the December 4, 1985 order. We affirm in part and reverse in part the contempt rulings set forth in that order.
 
 II.
 
 12
 A district court may issue a preliminary injunction only if the movant has shown that it is likely to prevail on the merits, that it will suffer irreparable harm absent such relief, and that the balance of equities and the public interest favor injunctive relief. See SK & F, Co. v. Premo Pharmaceutical Laboratories, 625 F.2d 1055, 1066-67 (3d Cir.1980); Freixenet, S.A. v. Admiral Wine & Liquor Co., 731 F.2d 148, 150-51 (3d Cir.1984); Ciba-Geigy Corp. v. Bolar Pharmaceutical Co., 719 F.2d 56, 57 (3d Cir.1983), cert. denied, 465 U.S. 1080, 104 S.Ct. 1444, 79 L.Ed.2d 763 (1984).
 
 
 13
 The scope of appellate review of a district court's discretionary grant of a preliminary injunction is narrow. "Unless the trial court abuses [its] discretion, commits an obvious error in applying the law, or makes a serious mistake in considering the proof, the appellate court must take the judgment of the trial court as presumptively correct." A.O. Smith Corp. v. FTC, 530 F.2d 515, 525 (3d Cir.1976); accord Freixenet, 731 F.2d at 150; Ciba-Geigy, 719 F.2d at 57; Ideal Toy Corp. v. Plawner Toy Manufacturing Corp., 685 F.2d 78, 80 (3d Cir.1982); SK & F, 625 F.2d at 1066.
 
 
 14
 We review the district court's findings of contempt to determine whether there is clear and convincing evidence that the terms of the injunction were in fact violated and whether the district court committed an error of law. Quinter v. Volkswagen of America, 676 F.2d 969, 974 (3d Cir.1982). We review the district court's refusal to find Dan-Dee in further contempt to determine whether there has been an abuse of discretion. Washington-Baltimore Newspaper Guild v. Washington Post Co., 626 F.2d 1029, 1031 (D.C.Cir.1980).
 
 III.
 
 15
 Section 43(a) of the Lanham Act proscribes not only trademark infringement in its narrow sense, but more generally creates a federal cause of action for unfair competition. Williams v. Curtiss-Wright Corp., 691 F.2d 168, 172 (3d Cir.1982). In particular, Sec. 43(a) provides a cause of action for unprivileged imitation, including trade dress infringement. SK & F, 625 F.2d at 1057, 1065; Ciba-Geigy Corp. v. Bolar Pharmaceutical Co., 747 F.2d 844, 849 n. 2, 854 (3d Cir.1984), cert. denied, 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1985).
 
 
 16
 "Although historically trade dress infringement consisted of copying a product's packaging, ... 'trade dress' in its more modern sense [may] refer to the appearance of the [product] itself...."[2] Ideal Toy, 685 F.2d at 80 n. 2; accord LeSportsac, Inc. v. K Mart Corp., 754 F.2d 71, 75 (2d Cir.1985); John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 980 (11th Cir.1983). "Trade dress is a complex composite of features" and "[t]he law of unfair competition in respect to trade dress requires that all of the features be considered together, not separately." SK & F, Co. v. Premo Pharmaceutical Laboratories, 481 F.Supp. 1184, 1187 (D.N.J.1979), aff'd, 625 F.2d 1055 (3d Cir.1980); accord Ciba-Geigy, 747 F.2d at 851 (affirming lower court's reasoning that "[i]t is the overall physical appearance of defendant's trade dress which is critical"); Freixenet, 731 F.2d at 153 ("total package").
 
 
 17
 To establish unprivileged imitation, whether of a single feature or a trade dress combination of features, it must be shown that the feature or overall combination of features imitated is non-functional, that it has acquired secondary meaning, and that members of the consuming public are likely to confuse the source of the product bearing the imitating feature or combination with the source of the product bearing the imitated feature or combination. Ciba-Geigy, 747 F.2d at 850, 854; Freixenet, 731 F.2d at 151; accord Prufrock Ltd. v. Lasater, 781 F.2d 129, 132 (8th Cir.1986); LeSportsac, 754 F.2d at 75; John H. Harland Co., 711 F.2d at 980. When a court is satisfied of these three elements it may properly enjoin the defendant from copying the claimed feature or combination of features.
 
 
 18
 When a feature or combination of features is found to be functional, it may be copied and the imitator may not be enjoined from using it, even if confusion in the marketplace will result. Keene Corp. v. Paraflex Industries, 653 F.2d 822, 827-28 (3d Cir.1981) (quoting Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 231-32, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964)). Nevertheless, if the functional feature or combination is also found to have acquired secondary meaning, the imitator may be required to take reasonable steps to minimize the risk of source confusion. General Radio Co. v. Superior Electric Co., 321 F.2d 857, 864 (3d Cir.1963), cert. denied, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964); Keene Corp., 653 F.2d at 827; Sylvania Electric Products v. Dura Electric Lamp Co., 247 F.2d 730, 734 (3d Cir.1957); Vaughan Novelty Mfg. Co. v. G.G. Greene Mfg. Corp., 202 F.2d 172, 176 & n. 11 (3d Cir.), cert. denied, 346 U.S. 820, 74 S.Ct. 34, 98 L.Ed. 346 (1953).
 
 
 19
 The federal law of unfair competition under Sec. 43(a) is not significantly different from the New Jersey law of unfair competition. SK & F, 625 F.2d at 1065; accord United States Golf Association v. St. Andrews Systems, Data-Max ("USGA"), 749 F.2d 1028, 1032 n. 6 (3d Cir.1984); Ciba-Geigy, 747 F.2d at 854 n. 7; Freixenet, 731 F.2d at 151 n. 5; Ideal Toy, 685 F.2d at 80 n. 1.
 
 A.
 
 20
 With this background we turn to the threshold issue in this case: did the district court err in concluding that the display of common images on the white stomach field of the Care Bears is a functional feature. We must first determine whether the correct legal standard was applied. If so, the district court's finding of functionality can be overturned only if clearly erroneous in light of the record before it. Ciba-Geigy, 747 F.2d at 850; Keene Corp., 653 F.2d at 827.
 
 
 21
 The district court correctly applied the standard of functionality that we recently articulated in USGA:
 
 
 22
 [T]he essence of the question is whether a particular feature of a product or service is substantially related to its value as a product or service, i.e., if the feature is part of the "function" served, or whether the primary value of a particular feature is the identification of the provider.
 
 
 23
 749 F.2d at 1033. As the district court recognized, where the feature is substantially related to the product's value as a product or service, it cannot be protected "because [its] usefulness in identifying the source of the product or service is outweighed by the social interest in competition and improvements, which are advanced by giving competitors free access to" that feature. 749 F.2d at 1033.
 
 
 24
 As the district court also noted, a feature is not functional merely because it makes the product more attractive to consumers. In Keene Corp., we rejected the concept of aesthetic functionality as interpreted by the Court of Appeals for the Ninth Circuit which suggests the contrary. Rather, we insisted that a feature have a significant relation to the utilitarian function of the product before it could be declared functional. 653 F.2d at 825.
 
 
 25
 Finally, the district court opinion reflects the other relevant principles established in Keene Corp. In that case, we also rejected "a standard inquiring whether the specific design features of the product '[are] competitively essential'." 653 F.2d at 827. "[M]erely because there are other shapes and designs 'which defendant could use and still produce a workable' product, the design used is not thereby non-functional." Id. (quoting Vaughan Novelty Mfg. Co. v. G.G. Greene Mfg. Corp., 202 F.2d 172, 175-76 n. 10 (3d Cir.), cert. denied, 346 U.S. 820, 74 S.Ct. 34, 98 L.Ed. 346 (1953)); see USGA, 749 F.2d at 1034; Ideal Toy, 685 F.2d at 81 n. 4. Because "the policy predicate for the entire functionality doctrine stems from the public interest in enhancing competition," however, a court may also consider " 'whether prohibition of imitation by others will deprive the others of something which will substantially hinder them in competition'." Keene Corp., 653 F.2d at 827 (quoting Restatement of Torts Sec. 742 comment a (1938)); see also USGA, 749 F.2d at 1033 n. 7, 1034.
 
 
 26
 Applying these legal principles to the record before it, the district court concluded that "tummy graphics" are functional. In essence, the district judge found that tummy graphics do not merely make Care Bears more appealing to the eye; they contribute to the effectiveness and performance of Care Bears as plush toy teddy bears. Specifically, the court noted that tummy graphics serve "the purpose of communicating the particular personality of each of the Care Bear characters, and ... convey an emotional message through such personality." 619 F.Supp. at 1219. In addition, the court found that "the particular symbols chosen by plaintiffs for the tummy graphics are functional: they are common figures and are typically associated with the messages attributed to them by plaintiffs." Id. Finally, because Dan-Dee has a right to utilize these functional features "in the best possible way," the court found the placement of the graphics on the bears' stomachs against a white background to be a part of the functional feature it referred to as tummy graphics. Id.
 
 
 27
 These findings have support in the record. If the marketer of a product advertises the utilitarian advantages of a particular feature, this constitutes strong evidence of its functionality. E.g., John H. Harland Co., 711 F.2d at 983 n. 28; In re Morton-Norwich Products, 671 F.2d 1332, 1341 (C.C.P.A.1982); 1 J. McCarthy, Trademarks and Unfair Competition Sec. 7:26, at 242 (2d ed. 1984). Here, as the district court emphasized, American and CPG stressed the utilitarian aspects of tummy graphics in their promotional materials. The district court made the following factual findings in this regard:
 
 
 28
 The subject of each of the "tummy graphics" used on the Care Bears was consciously selected from traditional symbols which best convey the emotional or personality message of each bear. This fact is emphasized in plaintiff's licensing manual: "Each Care Bear wears a symbol on its tummy which best explains its chosen mission." The graphics on the tummies of the first ten Care Bears and the messages they purportedly convey are listed below:
 
 
 29
 NAME GRAPHIC MESSAGE
Tenderheart Bear Heart Love and Caring
Funshine Bear Smiling Sun Fun and Laughter
Good Luck Bear Four Leaf Clover Good Luck
Birthday Bear Birthday Cake Happy Birthday
Friend Bear Two Smiling Daisies Friendship
Grumpy Bear Rain Cloud It's OK to be out of
 Sorts
Cheer Bear Rainbow Cheer and Hope
Bedtime Bear Crescent Moon and Star Sweet Dreams
Love a Lot Bear Two Hearts Touching Romantic Feelings
Wish Bear Wishing Star Wishes and Hope
 
 
 30
 The professed function of the Care Bears products is "to help children and adults express their feelings and share them with others" and the role of the tummy "graphics ... to convey the message of simple, human feelings--cheer, happiness, love and tenderness."
 
 
 31
 Id. at 1210. Given plaintiffs' own appraisal of the utility of tummy graphics, it was not clearly erroneous for the district court to conclude that they contributed to the function performed by plaintiffs' teddy bears.
 
 B.
 
 32
 The parties differ not only on whether the district court erred in finding that tummy graphics are functional, but also on what follows from that finding if it be sustained. Here also we believe the district judge applied sound legal principles.
 
 
 33
 We agree with the district court that one may have a protectible interest in a combination of features or elements that includes one or more functional features. LeSportsac, 754 F.2d at 76-77; John H. Harland Co., 711 F.2d at 984; In re Morton-Norwich Products, 671 F.2d at 1339; Dallas Cowboys Cheerleaders, 604 F.2d at 203-04; Truck Equipment Service Co., 536 F.2d at 1217; cf. Freixenet, 731 F.2d at 153 (combination of non-protectible and distinctive elements may constitute protectible trade dress); SK & F, 625 F.2d at 1064 (same). Indeed, virtually every product is a combination of functional and non-functional features and a rule denying protection to any combination of features including a functional one would emasculate the law of trade dress infringement.
 
 
 34
 Given that such combinations may be protectible and the district court's finding that the combination of elements claimed by American and CPG is not itself functional, the district court correctly concluded that plaintiffs could have a protectible interest in the Care Bears' "overall appearance" even though tummy graphics are an important and even an "essential" feature of that overall appearance. This means, as the district court recognized, that once plaintiffs established that this combination of elements had acquired secondary meaning, Dan-Dee could be required to select alternative non-functional features and utilize imitated functional ones in such a way as to avoid confusion as to source if that is feasible. LeSportsac, 754 F.2d at 76-77; John H. Harland Co., 711 F.2d at 984; In re Chesebrough Pond's, Inc., 224 U.S.P.Q. (BNA) 967, 968 (TTAB 1984).
 
 
 35
 We also believe the district court correctly framed the secondary meaning issue when it inquired whether the combination of elements claimed by American and CPG had acquired secondary meaning. Contrary to Dan-Dee's suggestion, a plaintiff in a case of this kind should not be required to show that the secondary meaning arises solely from non-functional features. Such a requirement would be difficult, if not impossible, to satisfy. Although we agree that there is language in General Radio Co. v. Superior Electric Co., 321 F.2d 857 (3d Cir.1963), cert. denied, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964), that can be read to support Dan-Dee's position on this point, it is dictum and we decline to adopt it as an accurate statement of the law.
 
 
 36
 We agree with Dan-Dee, however, that a court may not enter an injunction the practical effect of which is to preclude the defendant from using the functional features of the plaintiffs' combination. This proposition is a necessary corollary of the functionality doctrine. Accordingly, where it is not feasible in practice to avoid the potential for confusion through the selection of alternative non-functional elements or the manner in which one combines imitated functional ones, the most that can be required is clear labeling disclosing source or other reasonable steps to minimize the risk of confusion. Dan-Dee maintains that this is such a case. We confess uncertainty as to whether it is or it is not. Moreover, we are also unsure of whether the district court misperceived the scope of the duty to avoid creating confusion as to source.
 
 
 37
 The district court made the following observations in its "Conclusions of Law:"
 
 
 38
 There are ... numerous possible designs for plush, pastel-colored teddy bears, or other animals, with tummy graphics. Certainly such characteristics could be omitted, or altered, without causing a loss of something of essential value. United States Golf Association, supra, 749 F.2d at 1033. To thus require that the combination of such features not be slavishly copied would have no significant impact upon competition....
 
 
 39
 619 F.Supp at 1220 (some citations omitted).
 
 
 40
 American and CPG read this as a finding that it is feasible to produce a pastel, plush teddy bear with tummy graphics that will not hold the potential for having its source confused with that of the Care Bears. We acknowledge that it can be so read. On the other hand, this passage does not expressly make such a finding and plaintiffs' reading is difficult to reconcile with the record and other findings of the district court. Moreover, we note that shortly following these observations, the court concluded its analysis of the functionality issues with the following statement:
 
 
 41
 [D]efendants' products could and should have been designed to minimize confusion with plaintiffs' products, by altering non-functional elements of their stuffed animals, or combining functional elements in a different manner. Because the parties have focused on tummy graphics alone, the court is unable to evaluate how this should be done, without running afoul of the functionality doctrine.
 
 
 42
 Id. at 1220-21 (emphasis supplied) (footnote omitted). Thus, while the district court indicated that it believed Dan-Dee's products "could" have been designed to "minimize" confusion, it confessed that it had not focused on how this might be accomplished in a manner that would preserve Dan-Dee's right to utilize tummy graphics.
 
 
 43
 Dan-Dee stresses that, far from "slavishly" copying the features of plaintiffs' claimed combination, its products have only pastel coloration and functional features in common with Care Bears. This assertion appears to be supported by the record and the court's opinion can be read to acknowledge its accuracy. See 619 F.Supp. at 1214-15, 1223. At least the court made no contrary findings. In particular, no member of either the "Goodtime Gang" or the "New Goodtime Gang" appears to have (1) "an inverted triangular 'jowly' shaped head," (2) "heart-shaped paw pads," (3) "a pear-shaped body," (4) "an oval-domed shaped abdominal area," (5) "a heart-shaped nose," or (6) "a tuft of hair atop the head." See id. at 1209. Although Dan-Dee acknowledges that its products have pastel coloration, it points out that they are three-toned rather than two-toned like the Care Bears.
 
 
 44
 We recognize that these facts do not conclusively demonstrate that Dan-Dee cannot design a plush teddy bear with tummy graphics that will pose no substantial likelihood of confusion. They do, however, suggest that tummy graphics may be such a strong element of the claimed combination that Dan-Dee cannot do so. Moreover, we believe this suggestion finds strong support in the court's finding that Dan-Dee's use of tummy graphics on plush toy dogs, raccoons, monkeys and mice creates a likelihood of confusion with plaintiffs' Care Bears. Id. at 1224-25. If Dan-Dee cannot successfully distinguish its products by selecting an entirely different animal, it seems unlikely that it can distinguish its product by altering non-functional features of a teddy bear.[3]
 
 
 45
 Moreover, the district court's extension of its injunction to cover Dan-Dee's non-bear animals appears to reflect an overly expansive view of the duty to distinguish one's product from the product of another that has acquired secondary meaning. We do not understand American and CPG to claim a protectible interest in the standard configuration of a teddy bear. It could not do so successfully because it is well settled that shapes of products in the public domain may be freely copied. See, e.g., Warner Bros., Inc. v. Gay Toys, Inc., 724 F.2d 327, 332 (2d Cir.1983) (citing Moline Pressed Steel Co. v. Dayton Toy & Specialty Co., 30 F.2d 16, 18 (6th Cir.1929)); 1 J. McCarthy, Trademarks and Unfair Competition Sec. 8:7, at 297 (2d ed. 1984). It was for this reason that American and CPG designated the Care Bears' distinctive features for the district court. Because teddy bears are in the public domain, it necessarily follows, in our view, that the duty of Dan-Dee to distinguish its products where feasible to do so does not extend to abandoning the standard configuration of a teddy bear. In short, Dan-Dee appears to be entitled to market teddy bears just as it is entitled to utilize tummy graphics on plush toys. It should not be enjoined from using both together absent a finding that it is feasible, by altering other features of a teddy bear, to avoid a likelihood of confusion with plaintiffs' Care Bears. Unless the district court is able to make such a finding it should not grant interim or permanent relief which requires more than clear source-identifying labeling or distinguishing packaging.[4]IV.
 
 
 46
 The district court's self-confessed inability to specify how Dan-Dee might sufficiently differentiate its products made it difficult for that court to enter a preliminary injunction "without running afoul of the functionality doctrine." 619 F.Supp. at 1220-21. This difficulty resulted in a preliminary injunction with the following pertinent provisions:
 
 
 47
 III. For purposes of this Preliminary Injunction Order, the overall appearance of plaintiffs' Care Bear and Care Bear Cousin products portrayed in Exhibit C hereto, constitute symbols of origin entitled to protection under Sec. 43(a) of the Lanham Trademark Act of 1946 and under the common law, and the rights to such protection reside in plaintiffs. Various elements, when combined, contribute to the protectible overall appearance ..., including, but not limited to, their color, shape, size, packaging, the selection of graphics, the manner of use of such graphics.... The use of graphic designs on the white tummy portions of these products is functional and therefore not protectible by itself. However, the presence of graphic designs, when used in particular combinations, and/or when used in combination with one or more other elements, make a significant contribution to the protectible overall appearance.... Accordingly the presence of such designs shall be considered an important element in such protectible overall appearance.
 
 
 48
 IV. Nothing herein shall prevent defendants from using one or more of the elements which contribute to the protectible overall appearance of the Care Bear and Care Bear Cousin products provided that the overall appearance of the products in which such elements are used is not likely to cause confusion with the protectible overall appearance of plaintiffs' Care Bear and Care Bear Cousin products. For example, the overall appearance of such products of defendants identified and depicted in Exhibit D which products utilize one or more of such elements, are nevertheless not likely to cause confusion with the protectible overall appearance of plaintiffs' Care Bear and Care Bear Cousin products.
 
 
 49
 V. Defendants ... are preliminarily enjoined, directly or indirectly, from:
 
 
 50
 1. all further manufacture, importation, promotion, depiction on packaging, offering for sale, sale and/or delivery of (i) the products identified and depicted herein in Exhibit E, which products, including bears and other animals, embody elements which, in combination, make them likely to cause confusion with the overall appearance of plaintiffs' Care Bear and Care Bear Cousin products depicted in Exhibit C; or (ii) any other products which embody a combination of elements such that their overall appearance is likely to cause confusion with the overall appearance of plaintiffs' Care Bear and Care Bear Cousin products depicted in Exhibit C ...
 
 
 51
 While these efforts obviously did not fail for want of effort and sensitivity to the problem on the part of the district court, we are constrained to hold that the preliminary injunction entered below fails in material respects to satisfy the requirements of Rule 65(d).
 
 
 52
 Rule 65(d) of the Federal Rules of Civil Procedure states that each injunction "shall be specific in its terms" and "shall describe in reasonable detail ... the act or acts sought to be restrained." As explained in Ideal Toy Corp. v. Plawner Toy Mfg. Corp., 685 F.2d 78 (3d Cir.1982), "[t]he specificity requirements of Rule 65(d) are based on three considerations: 'to prevent uncertainty and confusion on the part of those faced with injunctive orders, ... to avoid the possible founding of a contempt citation on a decree too vague to be understood ... [and to let] an appellate tribunal ... know precisely what it is reviewing.' " Id. at 83 (quoting Schmidt v. Lessard, 414 U.S. 473, 476-77, 94 S.Ct. 713, 715, 38 L.Ed.2d 661 (1974)).
 
 
 53
 In a trade dress infringement case, "[t]he injunctive decree must be broad enough to protect the plaintiff, yet sufficiently narrow to avoid affording undeserved patent protection, and to permit the defendant to participate in activity outside the intended scope of the injunction." Ideal Toy, 685 F.2d at 84.
 
 
 54
 In Ideal Toy, this court found that the injunction granted by the district court failed to meet these tests. The injunction forbade the defendant from various uses of "plaintiff's distinctive trademarks, packaging, trade dress, style and labeling for plaintiff's 'RUBIK'S CUBE' puzzles, a specimen of which is shown in the photograph attached hereto." Id. at 83. We found that the "order unreasonably requires the parties to guess at the kinds of conduct that will be deemed infringement." Id. "While preliminary injunctions are intended to meet exigent circumstances and at times may lack the precision of final decrees, the person enjoined must nevertheless 'receive fair and precisely drawn notice of what the injunction actually prohibits.' " Id. at 84 (citation omitted) (quoting Granny Goose Foods v. Brotherhood of Teamsters, 415 U.S. 423, 444, 94 S.Ct. 1113, 1126, 39 L.Ed.2d 435 (1974)); accord Inmates of Allegheny County Jail v. Wecht, 754 F.2d 120, 129 (3d Cir.1985). This court rewrote the injunction to tightly define the protected elements of the trade dress. 685 F.2d at 84.
 
 
 55
 The preliminary injunction at issue here also fails to meet the above tests: Dan-Dee is required to guess at what kinds of conduct may constitute infringement, and privileged imitation as well as impermissible copying may fall within the scope of the order.[5] The order seeks to protect plaintiffs' products' overall appearance, but fails to circumscribe the definition of that overall appearance with an inclusive list of described features constituting the protected combination. Where, as here, there is a prominent functional feature that the defendant must be permitted to copy, it is particularly important that an injunctive order provide a clear definition of the protected combination.
 
 
 56
 In essence, the district court's injunction is a directive that Dan-Dee is to do no act which is "likely to cause confusion" with any of the 33 products depicted in Exhibit C. Although paragraphs III and IV of the injunction are obviously intended to provide Dan-Dee with some non-specific guidance, they fail in their purpose. First, neither provides an inclusive list of elements constituting the protected combination. Second, a comparison of the 50 impermissible plush toys depicted in Exhibit E with the 52 permissible plush toys depicted in Exhibit D yields no clear standard for distinguishing between the two. Significantly, none of the 52 permissible toys have tummy graphics.[6]
 
 
 57
 Although the specific prohibition against marketing the stuffed animals identified in Exhibit E does not violate Rule 65(d) on the ground of indefiniteness, for the reasons we have explained, we conclude that it cannot stand in the absence of a specific finding that its practical effect is not to foreclose Dan-Dee from marketing a teddy bear with tummy graphics.
 
 V.
 
 58
 The district court found that Dan-Dee's marketing of a stuffed toy dog constituted contempt of the September 14, 1984 Consent Order and that defendants' marketing of a stuffed toy bear constituted contempt of the November 29, 1983 Preliminary Injunction Order. The court ordered that compensation be paid to American and CPG. Having agreed to the September 14th Consent Order, Dan-Dee cannot now challenge its validity. Delaware Valley Citizens' Council For Clean Air v. Commonwealth, 678 F.2d 470, 477 (3d Cir.), cert. denied, 459 U.S. 969, 103 S.Ct. 298, 74 L.Ed.2d 280 (1982). Because the stuffed toy dog clearly falls within the scope of that Consent Order, the district court's first contempt finding against Dan-Dee must stand. We reach a contrary conclusion, however, with respect to the district court's second contempt ruling.
 
 
 59
 As we have earlier noted, the district court's November 29, 1983 preliminary injunction enjoined Dan-Dee from using tummy graphics on any pastel teddy bear between 6 and 24 inches in height. The district court found Dan-Dee in contempt for marketing a teddy bear "7 [inches] tall, of a pastel color, with a flower tummy graphic." 619 F.Supp. at 1226. In the course of making this finding, the district court answered in the following footnote Dan-Dee's argument that a finding of contempt would be inconsistent with the court's finding that tummy graphics are functional:
 
 
 60
 Of course, defendants were required to obey these Orders pending their challenge to them. See, e.g., Walker v. City of Birmingham, 388 U.S. 307, 313-14 [87 S.Ct. 1824, 1828, 18 L.Ed.2d 1210 ... (1967). Furthermore, the fact that the court now finds tummy graphics to be functional, and thus not properly a part of the prior injunctions, does not justify defendants' actions in producing products otherwise within the scope of such Orders, and confusingly similar to plaintiffs' products.
 
 
 61
 Id. at 1226 n. 6.
 
 
 62
 The Walker case states the rule for cases involving criminal contempt. As we explained in U.S. v. Spectro Food Corp., 544 F.2d 1175 (3d Cir.1976), the rule is different with respect to civil contempt:
 
 
 63
 While a defendant may be punished for criminal contempt for failing to obey an injunction which is later set aside, the same result does not follow in a civil contempt proceeding. The difference in treatment follows from the fact that whereas a criminal contempt order is punitive--to vindicate the authority of the court, the purpose of a civil contempt order is remedial--to coerce compliance with the injunction or recompense a party for losses caused by noncompliance. The right to remedial relief disappears when it is determined that an injunction was issued erroneously.
 
 
 64
 544 F.2d at 1182 (footnotes omitted); accord U.S. v. United Mine Workers, 330 U.S. 258, 294-95, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947); Latrobe Steel Co. v. United Steelworkers, 545 F.2d 1336, 1345 (3d Cir.1976). Thus, if the district court's first preliminary injunction is inconsistent with its later finding of functionality, Dan-Dee's citations for civil contempt cannot stand.[7]
 
 
 65
 We have earlier concluded that, assuming the functionality of tummy graphics, American and CPG have no right to foreclose Dan-Dee from utilizing tummy graphics on a teddy bear whether or not confusion in the market results. Given that conclusion, we also doubt that American and CPG are entitled to monopolize the use of tummy graphics in that portion of the teddy bear market characterized by pastel coloration and a height between 6 and 24 inches. Plaintiffs may not be entitled to exclusive use of pastel coloration, even in combination with a distinctive design, where a competitive need for the use of such colors exists. See Campbell Soup Co. v. Armour & Co., 175 F.2d 795, 798 (3d Cir.), cert. denied, 338 U.S. 847, 70 S.Ct. 88, 94 L.Ed. 518 (1949); In re Owens-Corning Fiberglass Corp., 774 F.2d 1116, 1120-22 (Fed.Cir.1985). Similarly, plaintiffs may be unable to obtain a protectible interest in a feature such as height if the marketing of toys of such height is necessary to compete successfully in the teddy bear market. The district court made no findings in this regard and, in the absence of such findings, we conclude that the November 29, 1983 injunction was improperly entered. Accordingly, the contempt citation relating to the November 29, 1983 preliminary injunction will be vacated.[8]
 
 VI.
 
 66
 In summary, the district court's finding that tummy graphics are functional is not clearly erroneous. Accordingly, Dan-Dee may be prohibited from marketing a teddy bear that creates a likelihood of confusion with Care Bears if, but only if, it is feasible to design a teddy bear with tummy graphics that creates no likelihood of such confusion. If it is not feasible for Dan-Dee to design a teddy bear with tummy graphics which creates no likelihood of confusion, Dan-Dee may not be prohibited from marketing a teddy bear with tummy graphics, but it may be required to take reasonable steps to minimize the confusion. Finally, any injunctive relief granted must provide Dan-Dee with fair notice of what it may and may not do.
 
 
 67
 The portion of the district court's order of December 4, 1985 finding Dan-Dee in contempt of the September 14, 1984 consent order will be affirmed. The remainder of the December 4, 1985 order will be vacated and the case will be remanded to the district court for such further action as may be appropriate on application by the parties to the district court. Each party shall bear its own costs.
 
 
 
 [1]
 The district court found that defendants deliberately copied "the most salient features of the Care Bears, in order to trade on plaintiffs' success." 619 F.Supp. at 1216. The court concluded that defendants had this intent both with respect to the stuffed bears of the "Goodtime Gang" and the non-bear stuffed animals of the "New Goodtime Gang." Id. at 1216-17
 
 
 [2]
 Attempts to incorporate protection for a product's overall design or appearance into Sec. 43(a) have come under a variety of guises. Some courts have found an unregistered trademark in the product's trade dress, see Blau Plumbing v. S.O.S. Fix-it, 781 F.2d 604, 608 (7th Cir.1986); LeSportsac, 754 F.2d at 75; Ideal Toy, 685 F.2d at 80 n. 3, overall design, see In re Morton-Norwich Products, 671 F.2d 1332, 1336 (C.C.P.A.1982); Keene Corp. v. Paraflex Industries, 653 F.2d 822, 825 (3d Cir.1981) ("design trademark"), combination of features, see Dallas Cowboys Cheerleaders v. Pussycat Cinema, 604 F.2d 200, 204 (2d Cir.1979), or appearance, see Universal City Studios v. J.A.R. Sales, Inc., 216 U.S.P.Q. (BNA) 679, 682 (C.D.Cal.1982). Others simply find that copying a product's overall trade dress or design is unfair competition, see Sun-Fun Products v. Suntan Research & Development, 656 F.2d 186, 192 (5th Cir.1981); Truck Equipment Service Co. v. Fruehauf Corp., 536 F.2d 1210, 1217 (8th Cir.) cert. denied, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976); Nabisco Brands, Inc. v. Quaker Oats Co., 547 F.Supp. 692, 697 (D.N.J.1982); J. McCarthy, Trademarks and Unfair Competition Sec. 8.1 (2d ed. 1984). Still others have found such copying to be trade dress infringement without attempting to link it to trademark infringement or designating it a subcategory of unfair competition. See John H. Harland Co., 711 F.2d at 980; Prufrock Ltd. v. Lasater, 781 F.2d 129, 132 (8th Cir.1986). As indicated above, we believe protection for a product's overall appearance or design should be considered in the analytic framework of trade dress infringement, which is a form of unprivileged imitation, which itself falls under the rubric of unfair competition
 
 
 [3]
 As we have earlier noted, the district court's injunction granted protection to the overall appearance of plaintiffs' Care Bear Cousins, as well as to the overall appearance of their Care Bears, although it did so without designating what distinctive design features, other than tummy graphics, these two product lines have in common. It is conceivable that the district court enjoined the marketing of the New Goodtime Gang because of a potential for confusion with the Care Bear Cousins rather than because of a potential for confusion with Care Bears. The finding in its opinion, however, is that Dan-Dee's "products, both bears and other species, are likely to be confused with plaintiffs' pre-existing Care Bear products." Moreover, without more explicit findings concerning the Care Bear Cousins, one cannot be sure that the effect of the second preliminary injunction is not simply to grant protection to the most prominent feature common to all of these products, tummy graphics, despite the district court's finding of functionality
 
 
 [4]
 In the course of its analysis of the likelihood of confusion issue, the district court made passing and non-specific reference to a similarity in packaging. 619 F.Supp. at 1223. The case was not analyzed by the district court, however, as one of unprivileged imitation of the trade dress of plaintiffs' packaging. Nevertheless, if the district court ultimately concludes that tummy graphics are functional and that it is not feasible to design a teddy bear with tummy graphics that will not result in confusion as to source, one of the reasonable measures that might be required of Dan-Dee to minimize confusion could entail the use of distinctive packaging
 
 
 [5]
 Plaintiffs argue that a broad decree is justified in the case of a bad faith defendant. Plaintiffs note the following language in Ideal Toy: "The degree of particularity required depends on the nature of the subject matter. McComb v. Jacksonville Paper Co., 336 U.S. 187, 191-92, 69 S.Ct. 497, 499-500, 93 L.Ed. 599 ... (1949) (decrees of generality are often necessary to prevent further violations where a proclivity for unlawful conduct has been shown)." Id. at 83. In McComb, however, the Court construed the injunction as generally enjoining practices violating the Fair Labor Standards Act. 336 U.S. at 192, 69 S.Ct. at 500. Thus, the enjoined party had adequate notice of the proscribed conduct from the detailed statutory scheme. Further, the injunction in McComb did not forbid the enjoined party from engaging in acts permitted by law; the injunction here may leave defendants at risk for permissible copying of functional features. In other cases cited by plaintiffs for the proposition that broad relief is warranted against a bad faith defendant, the court, though providing expansive injunctive relief, did so in clear and specific terms
 
 
 [6]
 In the only product in which there is any graphic directly on the "tummy" area of the product, the graphic is a small heart which is used in combination with much larger and more prominent words against a red heartshaped background. Such non-prominent use of graphics are not the "tummy graphics" as defined by the district court
 
 
 [7]
 An appellate court may review a finding of civil contempt "in connection with an appeal from the underlying preliminary injunction." Latrobe Steel Co. v. United Steelworkers, 545 F.2d 1336, 1340 (3d Cir.1976); accord U.S. v. Spectro Foods Corp., 544 F.2d 1175, 1179 (3d Cir.1976)
 
 
 [8]
 We find no merit to the contention of American and CPG that the district court abused its discretion in refusing to find Dan-Dee in contempt of the November 29, 1983 injunction for marketing plush toy animals other than bears