**UNION CARBIDE CORPORATION, Plaintiff,**

v.

**FRED MEYER, INC. and BASF Wyandotte Corporation, Defendants.**

Civ. No. 85–546–FR.

United States District Court, D. Oregon.

Aug. 9, 1985.

Jere M. Webb, Stoel, Rives, Boley, Fraser & Wyse, Portland, Or., Thomas A. Smart, Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendants.

J. Pierre Kolisch, Kolisch, Hartwell & Dickinson, Portland, Or., Kenneth R. Umans, Julie A. Lauber, Nims, Howes, Collison & Isner, New York City, John M. Bergin, Mary Ann Alford, Union Carbide Corp., Danbury, Conn., for plaintiff.

## OPINION AND ORDER

FRYE, District Judge:

Plaintiff Union Carbide Corporation (Union Carbide) brings this action for a preliminary injunction under the Lanham Act of 1946, 15 U.S.C. § 1125(a) and certain state statutes which preclude false designations or representations of a product's origin. Union Carbide claims defendants are violating section 1125(a) of the Lanham Act of 1946 by infringing its trademark and trade dress in the sale of antifreeze. Union Carbide seeks to enjoin defendants Fred Meyer Corporation (Fred Meyer) and BASF Wyandotte Corporation (Wyandotte) from continuing to market antifreeze in yellow, F-style, one-gallon jugs, claiming that the design of the jug and its yellow color constitute a protectable trade dress for its well-known, national brand of antifreeze, PRESTONE II.

Union Carbide claims consumers are confused by antifreeze jugs that duplicate the shape and color of PRESTONE II. As a result, consumers buy "other" brands, assuming they are either PRESTONE II or other antifreeze products manufactured, sponsored, or approved by Union Carbide. Union Carbide contends that defendants' intentional use of the yellow, F-style, one-gallon jugs in connection with the sale, offering for sale, distribution, and advertising of antifreeze products is an attempt to trade upon Union Carbide's good will and brand loyalty, thereby diverting its business and constituting a false designation or representation under 15 U.S.C. § 1125(a).

Defendants Fred Meyer and Wyandotte contend Union Carbide has no right to exclusive use of yellow, F-style, one-gallon jugs for packaging antifreeze. Defendants claim the jug design is not protectable as a trademark or trade dress because it is a functional, standard design with widespread, long-term use in the antifreeze industry. Defendants contend that plaintiff's claim is simply a demand for exclusive use of the color yellow and that the color yellow, or any other color, standing alone, is not protectable as a trademark. In addition, defendants assert that the combination of the color yellow and a nondistinctive, functional jug design are not protected by the law, because the jug labels sufficiently distinguish the products to avoid consumer confusion.

## BACKGROUND

Since 1927, Union Carbide has sold antifreeze under the trademark PRESTONE. In 1972, Union Carbide designed a plastic, F-style, one-gallon, yellow container for its PRESTONE II antifreeze. Since then Union Carbide has continuously advertised

and sold PRESTONE II in this container. Although unique at the time, the F-style, one-gallon jug is now standard in the anti-freeze industry. Different companies use it with a variety of colors to package anti-freeze.

In 1973, Morrison Oil of Portland, Oregon began to sell antifreeze in yellow, F-style, one-gallon containers. From 1975 until 1980, at least four other companies have used these containers. At present, at least eleven companies, in addition to Union Carbide, use the yellow, F-style, one-gallon jug to package antifreeze. They constitute only a small portion, 2–3%, of the total antifreeze market, however, because PRESTONE II dominates the market and some companies use different colors with their F-style jugs.

Union Carbide also sells packaged anti-freeze to other companies, who resell it to consumers under their own private labels. This is a common practice known as private labelling. In 1983, Union Carbide allowed Pep Boys, a retail chain of automobile accessory stores, to sell Union Carbide's antifreeze under a Pep Boys private label in a yellow, F-style, one-gallon jug. No license was required.

Defendant Fred Meyer is a chain of retail stores located in Oregon and other western states. For more than 50 years it has marketed private label products. During the mid-1970's it sold antifreeze supplied by Morrison Oil in yellow, F-style, one-gallon jugs. For several years prior to 1982, Fred Meyer purchased antifreeze in a white, F-style, one-gallon container from Union Carbide, and sold it under the Fred Meyer label. In June, 1982, Fred Meyer began to purchase antifreeze from Wyandotte in yellow, F-style, one-gallon jugs and to sell it under the Fred Meyer label.

Defendant Wyandotte manufactures and sells private label antifreeze to a variety of nationwide clients, including Fred Meyer. Wyandotte is the largest supplier of private label antifreeze in the United States. Wyandotte's clients choose the color of the container and the label design. For those clients whose volume of purchases does not reach the required minimum of 100,000 gallons, Wyandotte supplies a control brand, XPA, packaged in a yellow, F-style, one-gallon container.

In 1984, Union Carbide commissioned a study to determine whether its yellow, F-style, one-gallon jugs had acquired secondary meaning among consumers. With advice from legal counsel, it began to require retailers to obtain a license in order to sell Union Carbide's antifreeze under a private label in yellow, F-style, one-gallon containers. Two licensing agreements, one with Pep Boys, had been executed at the time of the preliminary injunction hearing.

On November 13, 1984, Union Carbide notified Wyandotte that it claimed rights in yellow, F-style, one-gallon antifreeze containers in substantially the same shape as Union Carbide's PRESTONE II container, and that it objected to Wyandotte's using and supplying these containers. (See page 1033 *infra* for portion of letter of November 13, 1984). Wyandotte continued to sell antifreeze in these jugs. On March 25, 1985, Union Carbide applied to register the yellow, F-style, one-gallon jug with the Federal Patent and Trademark Office. On March 26, 1985, Union Carbide filed its complaint in this case, seeking to enjoin sales of antifreeze in yellow, F-style, one-gallon jugs by Fred Meyer and Wyandotte. A hearing on the motion for a preliminary injunction was held on April 18, 19, and 22, 1985.

## STANDARD FOR A PRELIMINARY INJUNCTION

In *National Center for Immigration Rights, Inc. v. INS*, 743 F.2d 1365 (9th Cir.1984), the Ninth Circuit restated the standard for granting a preliminary injunction:

> To obtain a preliminary injunction the moving party must demonstrate either (1) probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships sharply favors the moving party. *Beltran v. Meyers*, 677 F.2d 1317, 1320 (9th Cir.1982). These are

not separate tests, but are at the ends of the continuum; the greater the relative hardship to the moving party, the less probability of success must be shown. (citation omitted). 743 F.2d at 1369.

## PROBABILITY OF SUCCESS ON THE MERITS

■ In order to prevail on its claim of trade dress and trademark infringement, Union Carbide must first prove that the yellow, F-style, one-gallon container is protectable as a trademark. To do so, it must demonstrate that this trade dress is nonfunctional and has acquired secondary meaning. 1 J. McCarthy, *Trademarks and Unfair Competition*, §§ 7:28, 8:2 (2d ed. 1984). If Union Carbide proves that its trade dress is nonfunctional and has acquired secondary meaning, it must then show that consumers are likely to confuse PRESTONE II with other brands of antifreeze packaged in the same yellow, F-style, one-gallon container. *Id.*, § 2:2.

■ To prevail on a claim of unfair competition, Union Carbide must show that its trade dress is non-functional and has acquired secondary meaning. Then it must make a strong showing that there is a likelihood of confusion when an ordinary purchaser views not just the yellow, F-style, one-gallon containers claimed as trade dress, but views the product's entire packaging, including the label. *Id.*, §§ 2:2, 8:3.

### Trade Dress and Trademark Infringement Claim

Union Carbide recognizes that neither color nor shape alone constitutes a protectable trademark or trade dress. However, Union Carbide maintains that the combination of color and an "ordinary, but specific" shape may be a protectable trademark or trade dress when there is evidence of secondary meaning. Union Carbide concedes it is easier to acquire trademark significance with a distinctive shape or with the combination of a distinctive shape and distinctive color than to acquire trademark significance with the combination of an or-dinary shape and a primary color like the yellow, F-style, one-gallon jug. Union Carbide acknowledges that the use of one color as a background on a package is usually rejected as having trademark significance. 1 J. McCarthy, *Trademarks and Unfair Competition*, § 7:17 (2d ed. 1984).

Union Carbide urges, however, that the proper legal analysis is to consider the claimed mark as a whole, rather than as separate elements of color and design. Union Carbide cites *Ex Parte Pillsbury Flour Mills Company*, 23 U.S.P.Q. 168 (Commissioner of Patents 1934) and *Application of Colonial Stores, Inc.*, 394 F.2d 549 (C.C.P.A.1968), among other cases, as precedent for this position. However, both of these cases specifically required an analysis of the separate words as well as the words combined to form one trade name, in order to decide whether the trade name could be registered. No authority is cited that allows this court to overlook the separate elements of color and design in order to reach its conclusion. Thus the court will analyze color and shape as separate elements and as combined elements to determine if Union Carbide has a protectable trade dress for its PRESTONE II.

### 1. *Shape*

■ The court finds that the F-style jug design is functional and cannot be protected as a matter of law, even if there is evidence of secondary meaning. 1 J. JcCarthy, *Trademarks and Unfair Competition*, §§ 8:6, 15:1C (2d ed. 1984). Ample evidence in the record demonstrates that antifreeze is almost universally marketed in containers of this design. Its shape is conducive to stacking for shipping and displaying and for consumer use and storage. The container is economical to produce. The F-style design affects "the purpose, action or performance, or the facility or economy of processing, handling, or using the product" and meets the test of whether an item is functional. *Intricate Metal Products, Inc. v. Schneider*, 324 F.2d 555, 562 (9th Cir.1963). Even if the court were to find the jug to be distinctive,

the fact that it is also functional precludes a finding of protectable trade dress. While it is true that the jug was distinctive when Union Carbide first designed it, an inequitable result would follow if the court were to protect it, in that "the first user of a container such as the now-standard soup can, potato chip bag, or cracker box would be able to preclude competitors from using these highly functional containers." *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 378 (1st Cir.1980).

The final problem with respect to Union Carbide's claim for protection of shape is its stated lack of objection to Wyandotte's use of the F-style jug. In the letter of November 13, 1984, to Wyandotte, Union Carbide's counsel stated:

We believe that our unique PRESTONE II brand yellow containers have developed a secondary meaning and hence we claim a proprietary interest in this trade dress. While we have *no objection to* the sale of antifreeze in *similar shaped containers* to PRESTONE II brand containers, we object to the use of antifreeze containers in substantially the same shape as ours predominately utilizing the color yellow. (Emphasis added).

### 2. *Color*

■ While Union Carbide has no protectable interest in the F-style design, the question remains whether the color yellow is protectable. The general rule is that color cannot be appropriated as a trademark, unless it is part of a distinctive design. 1 J. McCarthy, *Trademarks and Unfair Competition*, § 7:16 (2d ed. 1984). Courts usually reject a mere background color as distinctive. *Id.*, § 7:17.

A major reason for rejecting trademark protection for color is that there are only seven major colors. In *Campbell Soup Co. v. Armour and Co.*, 175 F.2d 795, 798 (3d Cir.1949), *cert. denied* 338 U.S. 847, 70 S.Ct. 88, 94 L.Ed.2d 518 (1949), the court

rejected plaintiff's trademark claims to the colors red and white in a label. It stated:

If [plaintiff] may thus monopolize red in all of its shades the next manufacturer may monopolize orange in all its shades and the next yellow in the same way. Obviously, the list of colors will soon run out.

A recent case, *In re Owens-Corning Fiberglas Corp.*, 221 U.S.P.Q. 1195 (1984), holds that this "color depletion theory" may be used to reject trademark protection for color where a competitive need for the color exists.

■ This court finds that the antifreeze packaging industry has a competitive need for the color yellow. This finding is based on the fact that yellow is one of the few primary colors, and that consumers respond favorably to yellow. *See,* McNeal, *Color and Its Impact on Consumer Packaging*, 8 The Business Review, University of Houston, 3, 12 (1961). There is also evidence in the record that some antifreeze sellers choose a yellow jug because it forms the most attractive background for their labels. The court cannot find, as Union Carbide urges, that the only reason Fred Meyer and Wyandotte and third parties selected yellow is to pass off their product as PRESTONE. The court specifically finds that Fred Meyer and Wyandotte have not acted with such intent here.

■ Union Carbide asserts that evidence of secondary meaning strengthens its claim for protection of its trade dress elements of shape and color. However, as in the *Owens-Corning Fiberglas* case, the court finds that a recognized competitive need for the color yellow in the industry precludes a consideration of secondary meaning. Only when no competitive need exists may evidence of secondary meaning be offered to demonstrate that color functions as a trademark and is therefore entitled to protection. Generally, other courts have not enjoined the use of a single background color even when it is recognized as a part of trade dress or trademark.[1] Instead, cer-

---

**1.** Union Carbide cites the pharmaceutical drug color cases which recognize background color

as a part of trade dress or trademark. However, medicine requires stronger protection than

tain distinctive combinations of colors or color and other elements which result in deceptively similar products are prohibited. *See, Eastman Kodak Co. v. Royal-Pioneer Paper Mfg. Co.,* 197 F.Supp. 132 (E.D. Penn.1961), *Eastman Kodak Co. v. Fotomat Corporation,* 317 F.Supp. 304 (N.D. Ga.1969), *app. dismissed,* 441 F.2d 1079 (5th Cir.1971), *Southwestern Bell Telephone Co. v. Nationwide Independent Directory Service, Inc.,* 371 F.Supp. 900 (W.D.Arkansas 1974), and *Canon U.S.A., Inc. v. Saber Sales Corp.,* 220 U.S.P.Q. 1003 (E.D.N.Y.1983). Here, no other distinctive elements are used with the jug's yellow background except the labels. Union Carbide does not claim an infringement of its labels.

### 3. The Combination of Shape and Color

Union Carbide contends that the combination of color and design may be a protectable trademark and trade dress, especially when there is evidence of secondary meaning. Defendants Fred Meyer and Wyandotte state that neither the design nor the color is protectable as trade dress; that Union Carbide's survey has failed to establish secondary meaning; and that in any event there is no likelihood that consumers will confuse their antifreeze brands with PRESTONE II.

■ To prevail on its claims, Union Carbide must demonstrate that the combination of the color yellow and the F-style

design is nonfunctional and has acquired secondary meaning. 1 J. McCarthy, *Trademarks and Unfair Competition,* §§ 7:28, 8:2 (2d ed. 1984). This court finds that this particular combination of otherwise unprotectable elements cannot be deemed protectable trade dress. This is so even if there is evidence of secondary meaning. In this case the court has concluded that evidence of secondary meaning is irrelevant with respect to color, because a competitive need for yellow exists in the industry. *In re Owens-Corning Fiberglas Corp., supra.* By the same reasoning, the court finds that secondary meaning with respect to the design of the container cannot be considered, because it is functional and as a matter of law may not be protected. 1 J. McCarthy, *Trademarks and Unfair Competition,* §§ 8:6, 15:1C (2d ed. 1984). The same rule applies to the combination of a color and a functional design in that "... functional features, ... because of other policy considerations, are never legally protected, no matter how much evidence of secondary meaning is presented." *Id.,* § 15:1C. The court rejects Union Carbide's assertion that the whole is greater than the sum of the parts when secondary meaning is injected into combinations of functional components of trade dress.

Because Union Carbide's trade dress for its PRESTONE II is unprotectable, the court need not consider the issue of whether consumers are likely to confuse it with the trade dress of the defendants.[2] In

---

other products because confusion of source or product can have disastrous consequences.

**2.** Even if the court were to consider the issue related to secondary meaning, Union Carbide has failed to prove that the public associates the yellow, F-style jug with a single source of antifreeze. First, Union Carbide's PRESTONE II advertising campaign has not stressed the color and shape of the antifreeze jug so as to support an inference of secondary meaning. Courts have held this absence critical in finding a mark not distinctive. *See, Mennen Co. v. Gillette Co.,* 565 F.Supp. 648, 653 (S.D.N.Y.1983), *aff'd,* 742 F.2d 1437 (2d Cir.1984); *In re Bell Electric Co.,* 192 U.S.P.Q. 395, 399 (T.T.A.B.1976); 1 J. McCarthy, *Trademarks and Unfair Competition,* § 7:8B (2d ed. 1984). Second, the survey conducted by Union Carbide is flawed in at least

the following aspects: (1) the respondents selected to participate in the survey were biased initially toward antifreeze containers because the screening questionnaire did not contain other liquid products whose containers resembled antifreeze containers; (2) the survey does not attempt to account for respondents' possible use of the term "Prestone" synonymously with antifreeze, which may unfairly have skewed the results in Union Carbide's favor; (3) guessing by respondents was not controlled since respondents were not told not to guess whose container they were viewing during the survey. *See, Zippo Manufacturing Co. v. Rogers Imports,* 216 F.Supp. 670, 687 (S.D.N.Y.1963). (Dr. Sorenson specifically instructed respondents not to guess, or to be "certain," in order to minimize the factor of respondent guessing.)

conclusion, the court finds that Union Carbide has not shown it is likely to succeed in its claim of trade dress and trademark infringement.

### Unfair Competition Claim

The test of unfair competition in the use of similar packaging is the likelihood that consumers will confuse one product with another. To decide this claim, the court must look at factors beyond the F-style design and color yellow, such as labelling. 1 J. McCarthy, *Trademarks and Unfair Competition*, §§ 2:2, 8:3 (2d ed. 1984). Here, the court looks to the total effect of defendants' package on the eye and mind of the ordinary purchaser to determine if confusion is likely. *Fabrica Incorporated v. El Dorada Corporation*, 697 F.2d 890, 894 (9th Cir.1983).

The court finds that the ordinary purchaser is not likely to confuse Union Carbide's antifreeze with the antifreeze of Wyandotte and Fred Meyer. The labels on these antifreeze containers are substantially dissimilar. The labels form a major part of the surface area of the one-gallon jugs and employ entirely different design and/or color schemes. No words similar to "PRESTONE II" appear. Different type size and letter colors are used. Union Carbide has failed to produce credible evidence that ordinary consumers are confusing, or are likely to confuse, antifreeze containers bearing labels with these substantial differences. While the *possibility* of confusion almost always exists, the test is likelihood of confusion, and it has not been demonstrated.

For purposes of a preliminary injunction, the court finds that Union Carbide has failed to show a likelihood of success at trial on the issue of consumer confusion.

### State Law

Under ORS 647.107, the court finds no likelihood of injury to Union Carbide's business reputation if others use the yellow, F-style jug and finds no distinctive mark to be diluted. In light of this ruling, there is no ground for injunctive relief under ORS 646.608 and ORS 647.095.

### IRREPARABLE INJURY

Union Carbide must show it will suffer irreparable injury pending a full trial on the merits in order to prevail on the motion for a preliminary injunction. The equitable remedy of a preliminary injunction cannot be granted unless the remedy at law is inadequate. Here, Union Carbide must demonstrate that money damages are not adequate compensation for the injury it claims it will endure without a preliminary injunction while awaiting trial.

The general rule is, where plaintiff makes a strong showing of likely confusion, irreparable injury follows as a matter of course. 1 J. McCarthy, *Trademarks and Unfair Competition*, § 30:18 (2d ed. 1984). Union Carbide has not shown a likelihood of consumer confusion in purchases of antifreeze. The court finds that irreparable injury cannot occur in these circumstances. No loss of reputation, trade, or good will, which cannot adequately be compensated with money damages, takes place in the absence of consumer confusion.

The court has considered Fred Meyer's and Wyandotte's allegations of laches and detrimental reliance with respect to Union Carbide's pursuit of its claimed proprietary rights in antifreeze container style and color. In light of the court's finding that consumer confusion is unlikely, these issues need not be addressed for purposes of a preliminary injunction.

IT IS ORDERED that Union Carbide's motion for a preliminary injunction is DENIED.