See also 669 F.Supp. 1445.

**UNITED STATES of America, Plaintiff,**

v.

**Gustavo CHAVERRA–CARDONA, Oscar Urego and Carlo Cuero, also known as Carlos Barrios, Defendants.**

No. 87 CR 340.

United States District Court, N.D. Illinois, E.D.

Sept. 28, 1987.

Anton R. Valukas, U.S. Atty., and Thomas J. Scorza, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

**1444**

Bryan D. Schultz, Chicago, Ill., for defendant Gustavo Chaverra-Cardona.

Steven B. Muslin, Chicago, Ill., for defendant Oscar Urego.

William H. Kampenga, Oak Lawn, Ill., for defendant Carlos Cuero.

### ORDER

BUA, District Judge.

Before this court is defendant Chaverra's motion to suppress statements. For the reasons stated herein, defendant's motion is denied.

### I. FACTS

Defendant Gustavo Chaverra-Cardona ("Chaverra") motions to suppress incriminating statements he made to a confidential government informant ("CI") while the two were inmates at the Chicago Metropolitan Correctional Center ("MCC"). Chaverra was awaiting trial in a narcotics case before Judge Shadur in which Assistant United States Attorney Ruben Castillo ("Castillo") was the assigned prosecutor and Fanny Altamirano ("Altamirano"), a government informant, was to testify as a prosecution witness. Chaverra and CI were apparently old acquaintances, and when Chaverra saw CI, he allegedly informed CI of his desire to have Castillo, Altamirano, and Altamirano's children assassinated. Chaverra asked CI for help in contacting assassins and offered to pay CI a finder's fee of $15,000 if he could produce the killers. CI agreed and immediately relayed Chaverra's plot to federal authorities in an attempt to barter for favorable treatment in various criminal matters pending against him. After a series of meetings between Chaverra and CI during which details of the assassination plot were discussed, government prosecutors decided Chaverra would be placed with CI in a U.S. Marshall's lockup. CI would wear a hidden recording device and attempt to engage Chaverra in a conversation about the murder plot. This meeting occurred during the afternoon of May 6, 1987, and incriminating statements by Chaverra were recorded. Later that day, Chaverra's alleged co-conspirators were arrested. On the morning of May 7, 1987, a grand jury returned an indictment against Chaverra and his co-conspirators for the alleged murder plot, and the parties were arraigned in court later that day.

Subsequently, on June 15 and 16, 1987 while Chaverra and CI were being transported to the federal building for court dates, the two were placed in detention areas close to each other. At these times, Chaverra allegedly made threatening remarks about the consequences of CI's cooperation and uttered statements which were incriminating in nature. As the meeting between the men was apparently unexpected and unintended, no listening devices were used to record Chaverra's statements.

### II. DISCUSSION

Chaverra first argues that the secretly recorded May 6, 1987 conversation with CI should be suppressed pursuant to the teachings of *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), and its progeny because the incriminating statements were elicited after Chaverra's Sixth Amendment right to counsel had arisen. Chaverra asserts that he had shifted from the status of suspect to accused in the minds of government prosecutors long before May 6 and that the government was merely delaying obtaining an indictment until it could "beef up" its case with recorded incriminating statements. As such, Chaverra asserts that his Sixth Amendment right to counsel had attached prior to May 6, and that his recorded statements must therefore be suppressed.

Chaverra's argument, however, is undercut by the fact that no formal judicial proceedings had been initiated prior to the recording. The law is clear that Sixth Amendment rights do not attach until judicial proceedings have been initiated—"whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed. 2d 424 (1977). In the present case, the facts indicate that although Chaverra was

being detained at the MCC with regard to a narcotics case pending before Judge Shadur, he was neither indicted nor arraigned for the offenses charged in this case until after the recording had occurred.

Chaverra contends that the government, by virtue of the amount of incriminating evidence it possessed prior to the recording, had sufficient evidence to approach the grand jury for an indictment prior to May 6 and therefore *de facto* judicial proceedings had begun. An identical argument, however, was addressed in *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), where the court refused to find Sixth Amendment rights were implicated when the government possessed sufficient evidence to seek an indictment but delayed grand jury proceedings until admissions by defendants were obtained. *Hoffa* makes clear that the government is under no obligation to terminate an ongoing investigation when enough evidence is collected to obtain an indictment and that the Sixth Amendment right to counsel does not attach until judicial proceedings are initiated. As no judicial proceedings were initiated until May 7, 1987, the May 6 statement was not obtained in violation of Chaverra's Sixth Amendment rights. Accordingly, Chaverra's motion to suppress the May 6 statement is denied.

■ With regard to the June 15 and 16, 1987 statements, Chaverra argues suppression is required because he was unaware that CI was a government informant and was tricked into making the incriminating statements without the benefit of counsel. A reading of the handwritten statement prepared and signed by CI concerning the two June incidents, however, reflects that Chaverra well knew CI was a government informant and that CI would testify against him. The written statement discloses that Chaverra told CI he knew CI "set everybody up" and sarcastically asked if CI "was going to testify against him today." The statement also reflects Chaverra making several threats against CI and his family. Given Chaverra's knowledge of CI's status as a government informant, admission of Chaverra's volunteered threats

and admissions on June 15 and 16, 1987 is not barred by the Sixth Amendment. *See United States v. Marks*, 816 F.2d 1207, 1212 (7th Cir.1987). As such, Chaverra's motion to suppress these statements is denied.

## III. CONCLUSION

For the foregoing reasons, defendant's motion to suppress statements is denied.

IT IS SO ORDERED.