**CPC INTERNATIONAL, INC., Plaintiff,**

v.

**CARIBE FOOD DISTRIBUTORS, Defendant.**

**Civ. A. No. 89–5359.**

United States District Court, D. New Jersey.

Feb. 14, 1990.

Ira J. Hammer and Stephen W. Feingold, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, N.J., and W.M. Webner, Mark N. Mutterperl and John W. Jenson, Baker & Hostetler, Washington, D.C., for plaintiff.

Warren F. Clark, Hackensack, N.J., and David B. Wolf, Walter, Conston, Alexander & Green, New York City, for defendant.

## OPINION AND ORDER

LECHNER, District Judge.

The plaintiff, CPC International, Inc. ("CPC"), has brought this motion for a preliminary injunction seeking to enjoin the defendant, Caribe Food Distributors ("Caribe"), from alleged trademark infringement and unfair competition under the common law and sections 32(1) and 43(a) Lanham Act, *as amended* 15 U.S.C. §§ 1114(1) & 1125(a). The complaint, filed 27 December 1989, alleges subject matter jurisdiction is founded on 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332 & 1338. For the reasons which follow, the motion for a preliminary injunction is granted to the extent discussed below.

*Facts*

CPC, a Delaware corporation with its principal place of business in New Jersey, manufactures and sells a variety of grocery products including "Mazola" brand corn oil. Complaint, ¶¶ 1, 7. CPC is the sole holder of all right, title and interest in the Mazola name, which has been used to market corn oil since 1911.[1] *Id.* at ¶ 8. This action arises from the introduction by Caribe of a corn oil under the name "La Mazorca" in a package which, CPC claims, is confusingly similar its product.

Mazola corn oil is manufactured in the United States and sold throughout the world. It is available in virtually all of the retail supermarkets in the United States. Affidavit of Michael H. Lyon, filed 22 January 1990 ("Lyon Aff."), ¶ 4. CPC sales people market Mazola corn oil to large grocery chains and wholesalers who distribute it to retail grocery stores. *Id.* at ¶ 5. CPC spends more than six million dollars annually to advertise Mazola corn oil on television and radio, through direct mail and in publications. *Id.* at ¶¶ 8–9.

As is common among corn oils, Mazola corn oil and La Mazorca corn oil are sold in a yellow, jug-shaped container with a green, screw-on cap. Affidavit of Raul Quiroz, filed 19 January 1990 ("Quiroz Aff."), ¶ 21, Ex. 2. The Mazola container holds 128 fluid ounces (one gallon), while the La Mazorca container holds 96 fluid ounces (three quarts). CPC also sells Mazola corn oil to institutional purchasers in larger containers utilizing the same trade dress as is used on the one gallon containers. CPC Brief[2] at 8.

CPC claims the Mazola corn oil label and trade dress are "distinctive" and consist of the following elements:

(a) A yellow jug-shaped bottle;

---

**1.** CPC holds the following United States Trademark Registrations:

| Mark | Reg. No. | Reg. Date | Goods |
|------|----------|-----------|-------|
| MAZOLA | 83,639 | 3 Oct. 1911 | Edible corn oil |
| MAZOLA | 721,414 | 12 Sept. 1961 | Margarine |
| MAZOLA | 1,172,467 | 6 Oct. 1981 | Vegetable oil cookware coating |
| MAZOLA | 1,251,230 | 13 Sept. 1983 | Edible corn oil |

See Complaint at ¶ 8.

**2.** The parties submitted the following briefs in connection with this motion: Memorandum in Support of Plaintiff's Motion for Preliminary Injunction, dated 27 December 1989 ("CPC Brief"); Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction, dated 15 January 1990 ("Caribe Brief"); and Reply Memorandum to Plaintiff's Motion for Preliminary Injunction, dated 22 January 1990 ("Reply Brief").

(b) A green screw-on cap;

(c) A label, consisting of a yellow, white, green and red color scheme affixed to the front panel of the bottle;

(d) The prominent display of the trademark MAZOLA across the center of the label;

(e) The prominent display on the label of a partially husked ear of corn;

(f) The words "NO CHOLESTEROL" in a banner across the top of the label;

(g) Use of the term "100% PURE" on the label.

CPC Brief at 5. Described in this manner, the Mazola corn oil label and trade dress are similar to Caribe's allegedly infringing La Mazorca corn oil label, with two qualifications: the use of the word "MAZORCA" across the center of the La Mazorca corn oil label and the use of the words "100% PURE CORN OIL" on the La Mazorca corn oil label. *Id.*

La Mazorca corn oil is marketed and distributed by Caribe, which is a New York corporation located in the Bronx, New York. Quiroz Aff. at ¶¶ 1, 3. Caribe develops and markets quality food products to Hispanic communities in the New York metropolitan area, including northeastern New Jersey. According to the affidavit of Caribe's president, the company concentrates its marketing efforts on Hispanics with ties to the Dominican Republic. *Id.* at ¶ 4.

Caribe began marketing La Mazorca corn oil in December 1988 primarily to stores patronized by Hispanics. *Id.* at ¶ 22. The product is marketed directly to grocery stores and bodegas. It is not advertised in the media. *Id.* at ¶¶ 23, 24. La Mazorca corn oil is manufactured by the second largest private packer in the United States, which also supplies corn oil to national supermarkets. Caribe represents that La Mazorca corn oil meets all applicable federal and state regulations. *Id.* at ¶¶ 26, 27.

Corn oil is a staple of Latin–American cooking. Caribe Brief at 3. Competition among corn oil sellers for Hispanic customers appears strong. There are at least five other brands of corn oil sold in the New York metropolitan area. *Id.* at ¶ 21, Ex. 2. Some of the brand names are Spanish references, such as "La Spagnola" corn oil, "Iberia" corn oil and "La Isla" corn oil.[3] *Id.* CPC advertises Mazola corn oil to Hispanic communities in the Spanish language. Complaint at ¶ 14.

Caribe claims it chose "La Mazorca" as the name for its corn oil because it means "ear of corn" in Spanish.[4] *Id.* at ¶ 6. The decision to market corn oil under that name in the United States was also motivated by the fact that "La Mazorca" has been a brand name for corn oil in the Dominican Republic for many years. The name "La Mazorca" was available for use in the United States at the time Caribe began marketing its corn oil here. The president of Caribe stated: "I chose the name because I thought it would appeal to Hispanic customers and remind them of the products from their home countries." *Id.*

By contrast, "Mazola" is a coined term, with no meaning in English or Spanish. CPC Brief at 1; Affidavit of Nicolas Shumway, Ph.D., filed 19 January 1990 ("Shumway Aff."), ¶ 3. However, Mazola corn oil is sold in Latin America, where it has a significant share of markets in Puerto Rico, Argentina and Brazil. Reply Brief at 3; Affidavit of Eric Stenshoel, Esq., filed 19 January 1990 ("Stenshoel Aff."), at Ex. H. CPC claims, without supporting affidavits, "it is . . . likely that the corn oil most Hispanic consumers recognize is MAZOLA corn oil." Reply Brief at 2.

The crux of this dispute is the label and trade dress of Caribe's La Mazorca corn oil. At the outset, it is noted that the La Mazorca corn oil label displays the word "Mazorca" prominently across the center of the label, but the word "La" is presented in very small letters above the "M" in Mazorca. Even from a short distance, the La

---

3. Other brands of corn oil are named "Crisco" corn oil and "Krasdale" corn oil. *Id.*

4. CPC claims the word "mazorca" also means "tyrannical government" or "tyrant" in Spanish. Reply Brief at 3.

Mazorca corn oil label appears to read "Mazorca."

CPC claims the label of La Mazorca corn oil "closely mimics" that of Mazola corn oil. CPC Brief at 11. As previously mentioned, describing the two labels as CPC does leads to no conclusion other than they are identical. However, further inspection of the two labels reveals numerous distinguishing characteristics.

As CPC claims, the color schemes of the two labels are similar. However, the proportions in which those colors are used is different. On Caribe's product, the word "La Mazorca" is printed in yellow letters on a dark green background. Dark green and yellow are the predominant colors on the La Mazorca corn oil label, which is emphasized by a dark green border. In contrast, on the Mazola corn oil label the term "Mazola" is printed in dark green letters on a white background which has no border. White is the predominant color on the Mazola label. Moreover, the CPC label capitalizes the "M" of Mazola and uses slightly stylized, lower-case letters for the remaining letters, while the Caribe label uses all-capital, block letters for the word Mazorca.

CPC makes much of the fact that both labels display pictures of an ear of corn. The ear of corn displayed on the La Mazorca corn oil label is realistically portrayed and is placed horizontally above the word "Mazorca." The Mazola corn oil label, on the other hand, depicts a stylized ear of corn placed vertically on the label to the left of the word "Mazola." The ear of corn is partially obscured by the "M" in Mazola. Notably, all of the seven brands of corn oil available to consumers in the New York metropolitan area display an ear of corn. Quiroz Aff, Ex. 2.

Under the word "Mazorca," on the Caribe label, are the words "All Natural" in fanciful script letters; below that are the words "100% PURE CORN OIL" in small block type. On the Mazola corn oil label, the words "100% PURE" appear in small

block type above the words "CORN OIL", which appear in larger block type. The Mazola corn oil label does not contain the words "all natural."

Finally, both the Mazola and the La Mazorca labels prominently display the words "NO CHOLESTEROL." The Mazola label contains the words "NO CHOLESTEROL" in yellow letters on a green banner overlaying a red heart on the upper right hand corner of the label. On the La Mazorca corn oil label, however, the words "NO CHOLESTEROL" appear in white letters on a red background diagonally across the upper left hand corner of the label. A heart is not depicted on the La Mazorca corn oil label.[5]

CPC claims the marketing by Caribe of a corn oil bearing the La Mazorca name and using the container and label described above is an infringement of CPC's ownership of the Mazola trademark in violation of section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). CPC also claims Caribe is engaging in unfair competition in violation of section 43(a) of the Lanham Act, *as amended* 15 U.S.C. § 1125(a). By bringing this motion for a preliminary injunction, CPC seeks immediate relief from these alleged violations.

CPC further alleges Caribe has made a false representation of the quality of its product in violation of section 43(a) of the Lanham Act, *as amended* 15 U.S.C. § 1125(a), by including the following sentence in Spanish on the back of the La Mazorca corn oil container: "El simbolo 100% significa que es un aceite de la mayor calidad official en los Estados Unidos." Quiroz Aff. at ¶ 28. CPC claims this sentence can be translated as: "The 100% symbol means that it is one of the official high quality oils in the United States." CPC Brief at 12. Caribe claims, however, the sentence means: "The 100% symbol means that it is an oil of the official highest quality in the United States." Quiroz Aff. at ¶ 28. This issue will be dealt with sepa-

---

**5.** The La Mazorca corn oil label attached to the Quiroz Affidavit has an outline of the Dominican Republic on the lower left hand corner, but this feature has been dropped from the label. Quiroz Aff. at ¶ 20.

rately from the interrelated issues of trademark and trade dress infringement.

*Discussion*

■ To prevail on a motion for a preliminary injunction, the moving party must demonstrate "(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of such relief; (3) whether granting preliminary injunctive relief will result in even greater harm to the nonmoving party; and (4) whether granting preliminary relief will be in the public interest." *SI Handling Sys., Inc. v. Heisley,* 753 F.2d 1244, 1254 (3d Cir.1985) (citing *Klitzman, Klitzman and Gallagher v. Krut,* 744 F.2d 955, 958–59 (3d Cir.1984) and *Continental Group v. Amoco Chem. Corp.,* 614 F.2d 351, 356–57 (3d Cir.1980)); *see also American Greetings Corp. v. Dan–Dee Imports, Inc.,* 807 F.2d 1136, 1140 (3d Cir.1986) ("*American Greetings I* ").

I. *Trade Name and Trade Dress*
A. *Likelihood of Success on the Merits*

The liability element of a trademark infringement violation under Lanham Act section 32(1), 15 U.S.C. § 1114(1), is whether the allegedly infringing mark "is likely to cause confusion, or to cause mistake, or to deceive." *Id.* The Third Circuit has recognized an analogous cause of action for infringement of trade dress under the unfair competition provision of section 43(a) of the Lanham Act, *as amended* 15 U.S.C. § 1125(a).[6] *American Greetings I,* 807 F.2d at 1141 & n. 2.

A plaintiff making a claim for trade dress infringement must show "that the feature or overall combination of features

imitated is non-functional, that it has acquired secondary meaning, and that members of the consuming public are *likely to confuse* the source of the product bearing the imitating feature or combination with the source of the product bearing the imitated feature or combination." *Id.* at 1141 (emphasis added). *Accord American Home Prod. Corp. v. Barr Laboratories, Inc.,* 834 F.2d 368, 370 (3d Cir.1987). Thus, CPC's trademark infringement and trade dress infringement claims both require a showing that the public is likely to confuse its product and La Mazorca corn oil.

Under the so-called "likelihood of confusion" test, CPC must show "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225, 1229 (3d Cir. 1978). *Accord Ciba–Geigy Corp. v. Bolar Pharmaceutical Co.,* 747 F.2d 844, 851 (3d Cir.1984), *cert. denied,* 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1985); *Reedco, Inc. v. Hoffman–La Roche, Inc.,* 667 F.Supp. 1072, 1079 (D.N.J.1987).

A myriad of factors may be considered in determining whether a likelihood of confusion exists, including:

(1) the degree of similarity between the owner's mark and the allegedly infringing product; (2) the strength of owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of defendant in adopt-

---

**6.** The relevant portion of the Lanham Act provides:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person

with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another persons's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a), *as amended* (effective 16 November 1989).

ing the mark; (6) the evidence of actual confusion; (7) whether the goods ... are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of the public because of the similarity of function; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market.

*Scott Paper Co.*, 589 F.2d at 1229. These factors are applicable to both trademark and trade dress infringement cases and in unfair competition cases. *Knorr–Nahrmittel, A.G. v. Reese Finer Foods, Inc.*, 695 F.Supp. 787, 792 (D.N.J.1988); *Reedco, Inc.*, 667 F.Supp. at 1078; *American Greetings Corp. v. Dan–Dee Imports, Inc.*, 619 F.Supp. 1204, 1222 (D.N.J.1985) ("*American Greetings II*"). Although all of the *Scott Paper* factors are relevant to this matter, CPC's claim concentrates on the first factor, the degree of similarity.

1. Degree of Similarity.

CPC argues the placement of La Mazorca corn oil on grocers' shelves near to CPC's Mazola corn oil "will likely cause customers to select MAZORCA corn oil in the belief that MAZOLA corn oil is being chosen." [7] CPC Brief at 9. Short of confusion between the products themselves, CPC claims the public will likely be confused or deceived into believing that the source of La Mazorca corn oil is the same as that of Mazola corn oil or that there is common license or approval of the products. *Id.*

There is no doubt the products in this case are similar—both are corn oil. The outcome of this dispute hinges on the degree of similarity of the tradenames and trade dress of Mazola corn oil and La Mazorca corn oil. "The greater the similarity between the two marks, the greater the likelihood of confusion." *Dominion Bank-*

*shares v. Devon Holding Co.*, 690 F.Supp. 338, 346 (E.D.Pa.1988).

a. *Similarity of the brand names.*

CPC argues the name "Mazorca" is nearly identical to "Mazola" in terms of visual and aural similarity. CPC Brief at 10–11. In its defense, Caribe contends the names look and sound different and have different meanings. CPC Brief at 10.

While the word "Mazorca" is longer than the word "Mazola," they share the same first four letters and end with the same vowel. There is similarity between the visual appearance of the words Mazola and Mazorca. The aural similarity is less evident, considering the difference between the soft "ola" in Mazola and the hard "orca" in Mazorca. I find there is an overall likelihood of confusion between the words Mazola and Mazorca. *Cf. CPC Int'l, Inc. v. Balzola Foods Corp.*, 224 U.S.P.Q. 85, 88 (S.D.Fla.1984) (finding "Mazola" confusingly similar to "Balzola").

The similarities in appearance and sound are virtually eliminated, however, if the word "La" is added to "Mazorca," as in the Spanish word for ear of corn. The visual appearances of "La Mazorca" and "Mazola" are different. Similarly, the aural differences are enhanced when one compares the sound of "La Mazorca" to that of "Mazola."

Caribe argues there is no likelihood of confusion between the brands because "la mazorca" means "ear of corn" in Spanish. Caribe has submitted two affidavits in support of its claim that a Spanish speaking customer would not confuse the name La Mazorca with the coined term Mazola because such a consumer would recognize the Spanish word for ear of corn. Shumway Aff. at ¶¶ 10, 12; Quiroz Aff. at ¶ 9. In opposition, CPC rests on the argument that consumers do not buy corn oil "by the definition of the brand." CPC Brief at 4. As Caribe argues, however, it is unrealistic

---

**7.** CPC claims "[o]n information and belief, Caribe sales/delivery persons place the MAZORCA corn oil product on grocery shelves near or intermixed with MAZOLA corn oil in and attempt to mislead the public by passing-off the MAZORCA product as MAZOLA corn oil." Complaint at ¶ 21. Caribe has categorically denied this conduct in a sworn affidavit. Quiroz Aff. at ¶ 23. There is no opposing affidavit filed by CPC. Therefore, based upon the data before me, I find Caribe has not engaged in this conduct.

to assume a Spanish speaking consumer would confuse a common term such as "ear of corn" with a coined name like "Mazola." Shumway Aff. at ¶¶ 8, 9.

The Spanish meaning of "la mazorca" is probably not meaningful to *non*-Spanish speaking consumers. The fact that the La Mazorca corn oil label uses a significant amount of English words to describe the product renders incredible Caribe's assertion that it intends to market La Mazorca corn oil *exclusively* to Spanish-speaking customers. Caribe Brief at 10.

While there may be no likelihood of confusion of the names as to Spanish speaking consumers, there is a significant visual and aural similarity between "Mazola" and "Mazorca." As stated previously, however, the addition of the word "La" to La Mazorca corn oil eliminates the similarity between the competing brand names.[8]

   b. *Similarity of trade dress.*

In determining whether a likelihood of confusion exists as to trade dress, the Third Circuit has stated the court must look to the overall appearance of the competing products, not merely the specific similarities or differences. *American Greetings I*, 807 F.2d at 1141 (citing *SK & F Co. v. Premo Pharmaceutical Laboratories*, 481 F.Supp. 1184, 1187 (D.N.J.1979), *aff'd*, 625 F.2d 1055 (3d Cir.1980)); *see also Ciba–Geigy Corp.*, 747 F.2d at 851. In this case, the La Mazorca corn oil label contains the word "La" but it is situated in such small lettering and in such a position that it creates the impression that the product's name is "Mazorca" corn oil.

The overall appearance of the two labels, however, is different. A number of features distinguish La Mazorca corn oil and Mazola corn oil. Most significant is the way in which the brand names are displayed on the products' labels. The La Mazorca corn oil label uses a predominantly dark green and yellow background, over which is imposed the word "Mazorca" in large, yellow block letters. The Mazola corn oil label displays the brand name in dark green letters on a white background. The overall effect of the two labels is different: one has a dark background and light colored letters, and the other has a light background with dark colored letters.

An additional difference, not discussed by the parties, is that CPC capitalizes only the initial letter of "Mazola," while Caribe's label capitalizes all of the letters in "Mazorca." Other differences lead to a finding of that the overall appearances of the labels are not similar. For example, as discussed above, the display of the words "NO CHOLESTEROL" is different on the two labels; there is no heart on the La Mazorca corn oil label. Also, the Caribe label contains the words "All Natural" in white letters in the center which do not appear on the Mazola label. The different representations of the ears of corn on the two labels further detracts from the overall likelihood of confusion.

■ The bottles in which both products are sold are yellow, jug-shaped containers with a green screw-on top. There are minor differences in the two containers; for example, the handle on the CPC jug is vertical, while the Caribe handle is tilted. Regardless of these differences, the overall appearance of the jugs is substantially the same. However, a preliminary injunction preventing the use of a yellow, jug-shaped container by Caribe will not issue because there is no evidence establishing the Mazola corn oil container has acquired secondary meaning.[9]

---

**8.** This distinction is essential to the relief granted, as discussed below.

**9.** To establish a claim for trade dress infringement, the plaintiff must show the non-functional attributes of the trade dress have acquired secondary meaning. *American Greetings I*, 807 F.2d at 396. "Trade dress acquires secondary meaning when the consuming public associates it with the source of the particular product rather than the product itself." *Knorr–Nahrmit-*

*tel, A.G.*, 695 F.Supp. at 792. In determining whether secondary meaning has been established, a court may consider the package's length of use and buyer association as well as the fact of copyrighting. *Id.* (citing *Ideal Toy Corp. v. Plawner Toy Mfg. Corp.*, 685 F.2d 78, 82 (3d Cir.1982)); *Warner Lambert Co. v. McCrory's Corp.*, 718 F.Supp. 389, 397 (D.N.J.1989). CPC has not provided any data relevant to this determination.

In *Union Carbide Corp. v. Fred Meyer, Inc.*, 619 F.Supp. 1028 (D.Or.1985), a manufacturer of automotive antifreeze alleged trade dress infringement by another antifreeze manufacturer which was marketing its product in a yellow, plastic, jug-shaped container identical to that of the plaintiff's container. *Id.* at 1032–33. The court denied the requested relief, finding the plaintiff's jug had a functional purpose and had not acquired secondary meaning. *Id.*

All of the seven corn oils sold in the New York metropolitan area are marketed in a yellow, jug-shaped container with a green cap. Quiroz Aff. at ¶ 21, Ex. 2. CPC has not established it is entitled to claim the exclusive ownership of the right to market corn oil in such a container. *Cf. Warner Lambert Co. v. McCrory's Corp.*, 718 F.Supp. 389, 397 (D.N.J.1989) ("purely functional features of a product or those representing an industry standard should not be allowed to be monopolized by a single manufacturer").

Finally, although both products use the words "100% PURE" this does not impact the likelihood of confusion. The words are displayed differently on the two labels. Moreover, the trademark registration of the Mazola corn oil trademark specifically denies the right of CPC to claim exclusive ownership of those words. Complaint at Exhibit D ("No claim is made to the exclusive right to use the words '100% Pure Corn Oil', apart from the mark as shown.").

The only similarity between the trade dress of the competing products is the similarity between the brand names themselves. The addition of the word "La" to the Caribe label—in letters of the same size, type and color as and on the same line as the word "Mazorca"—will eliminate any likelihood of confusion between La Mazorca corn oil and Mazola corn oil. CPC's motion for a preliminary injunction is granted to this extent.[10]

Before continuing to the next element of the discussion, it is necessary to distinguish some of the case law cited by CPC. For example, in *Pennwalt Corp. v. Becton, Dickinson & Co.*, 434 F.Supp. 758 (D.N.J. 1977), the court considered the plaintiff's claim that the defendant's use of the name JOCKEX for its "jock itch" ointment was confusingly similar to the plaintiff's mark, CRUEX. CPC Brief at 11, n. 1. The court granted a preliminary injunction enjoining the defendant from using the JOCKEX name and package.

In the *Pennwalt Corp.* case, the court considered trade dress elements which were much closer than in the instant case. Both products were marketed in white squeeze bottles with the brand names in black. 434 F.Supp. at 762, n. 13. In addition, the infringing product mimicked the "male" symbol used on the "O" on the label of the plaintiff's product. Furthermore, the overall color scheme of the both products relied on black, blue and orange versus red. *Id.* In this case, the overall color scheme of the La Mazorca corn oil label is dissimilar to that of Mazola corn oil and the brand names are displayed in different colors and different type.

In *McNeil Laboratories v. American Home Prod. Corp.*, 416 F.Supp. 804 (D.N.J. 1976), the court found TYLENOL and EXTRANOL to be confusingly similar. A "major reason" for the court's decision, however, was the fact that the plaintiff was about to market an extra-strength version of its product. *Id.* at 804. The court held, "it is not at all inconceivable that a consumer might enter a store to purchase the new extra-strength 'TYLENOL' and, instead, buy 'EXTRANOL'—assuming that [plaintiff] markets its extra-strength product under that name." *Id.* at 804–05. In the case *sub judice* there is no such danger. The only confusion between La Mazorca corn oil and Mazola corn oil is the

---

**10.** This order does not prevent Caribe from abandoning the name La Mazorca corn oil, nor does it preclude the possibility that further modifications of the La Mazorca corn oil label will be necessary following the verdict at trial.

At oral argument, counsel for Caribe offered to change the La Mazorca corn oil label such that the words "La Mazorca" would appear in letters of the same size, type and color and along an arched line. Counsel for Caribe presented galleys of the proposed changes to demonstrate the appearance of the modified label. It appears these changes will satisfy this order.

way Caribe displays the name on the La Mazorca corn oil label. Moreover, the relief granted to CPC adequately protects against the likelihood of confusion during the pendency of this case.

Finally, and most relevant to this case, CPC relies on *CPC Int'l Inc. v. Balzola Foods Corp.*, *supra*, which involved a claim of trademark and trade dress infringement of the Mazola corn oil label. In the *Balzola* case, the court granted CPC a preliminary injunction enjoining the defendant from marketing a corn oil under the names "Balzola" and "E. Balzola" because, among other things, the names were found to be "similar in design, presentation, spelling, pronunciation and impact" to Mazola corn oil. 224 U.S.P.Q. at 88.

The *Balzola* court based it conclusion on the fact that the defendant's corn oil label "colorably imitates, or copies CPC's corn oil label and CPC's federal registration of its label." *Id.* at 88. The court also found that, in designing its label, the defendant intended "to trade on the fame of the CPC mark and the goodwill associated with it." *Id.* at 89. In the case *sub judice*, the trade dress of Caribe's corn oil does not create a likelihood of confusion with CPC's product, aside from the similarity which may be caused by the confusingly similar use of the words "Mazorca" and "Mazola." The term "La Mazorca" is not confusingly similar to "Mazola."

2. Strength of CPC's Trademark, Price of the Goods, Marketing Strategies and Length of Time in Use.

Caribe agrees Mazola "is undeniably a strong, coined term." Caribe Brief at 15. The evidence submitted by CPC establishes Mazola corn oil is recognized favorably around the world. The name has been used since 1911, although it is unclear how long the trade dress relevant to this case has been in use. La Mazorca corn oil has been available only since mid-December of 1988. These factors weigh in favor of granting CPC a preliminary injunction to prevent likelihood of confusion during the pendency of this case; any trading off of the Mazola name will cause harm to the

positive product association and good will of Mazola corn oil.

La Mazorca corn oil competes directly with Mazola corn oil for sales in Hispanic communities in the New York metropolitan area. This fact is not changed because the products are marketed through different channels, despite Caribe's arguments to the contrary. The similarity of the markets weighs in favor of the likelihood of confusion between the two.

Caribe indicates the price of the goods is different: "LA MAZORCA's 96 fluid ounce container retails for about $3.33 ($.0347 per fluid ounce), while MAZOLA['s] 112 fluid ounce container retails for about $4.73 to $5.73 ($.0423 to $.0495 per fluid ounce)." Caribe Brief at 15. This fact weighs in favor of the conclusion reached above that the only likelihood of confusion between the products is the use of the names on the labels themselves.

3. Other Evidence.

There has been no evidence submitted by CPC that Caribe intended to copy the Mazola mark. Indeed, Caribe has offered uncontroverted evidence that it did not copy the Mazola label in designing the La Mazorca label. Quiroz Aff. at ¶ 8; Affidavit of Frank Pugliese, filed 19 January 1990 ("Pugliese Aff."), ¶ 7. Caribe's affidavits demonstrate, if anything, an intent to imitate another brand of corn oil, which is sold in the Dominican Republic. This is immaterial to the question whether a likelihood of confusion exists in this case. The mere existence of an intent to imitate the mark of another—even the plaintiff's mark—does not necessarily lead to a finding of likelihood of confusion. *American Home Prod. Corp.*, 834 F.2d at 371. There has been no showing that Caribe intended to trade off of the fame of the Mazola name.

B. *Irreparable Injury*

■ The plaintiff need not show actual confusion to prevail in a trademark infringement claim. *Premier Dental Prod. v. Darby Dental Supply Co.*, 794 F.2d 850, 859 (3d Cir.1986); *Tefal, S.A. v. Products Int'l Co.*, 529 F.2d 495, 497–98 (3d Cir. 1975); *Holiday Inns, Inc. v. Trump*, 617

F.Supp. 1443, 1473 (D.N.J.1985); *McNeil Laboratories, Inc.*, 416 F.Supp. at 804. If the plaintiff shows the existence of a likelihood of confusion, irreparable injury is presumed. *American Greetings II*, 619 F.Supp. at 1222. CPC has demonstrated the existence of a likelihood of confusion in this case, which can be remedied for purposes of this motion by amending the Caribe label as indicated above. Therefore, CPC need not prove actual confusion between its product and La Mazorca corn oil.

### C. *Balancing of Equities and Public Interests*

There are equities to be considered on both sides of this dispute. On one hand, Mazola corn oil is a well established brand name, built up by CPC over more than seventy-five years and representing an investment of millions of dollars. On the other hand, Caribe is a small company which has been in business since October 1987, marketing products such as rice, beans, seasonings, oils and canned goods to primarily Hispanic communities. Quiroz Aff. at ¶¶ 3, 4.

Caribe began marketing La Mazorca corn oil in mid-December 1988 "exclusively to stores in the New York metropolitan area patronized by Spanish–Americans." *Id.* at ¶ 22. The product is not advertised, but it already accounts for approximately forty per cent of Caribe's gross revenues. *Id.* at ¶ 25. According to affidavits submitted, Caribe did not intend to imitate the Mazola trademark when the La Mazorca corn oil label was designed. *Id.* at ¶ 8; Pugliese Aff. at ¶ 7.

At oral argument, a modification to the La Mazorca corn oil label was proposed by counsel for Caribe. It appears the proposed changes will satisfy the provisions of this order. Caribe will also be given a reasonable time period in which to affect a modification of the label consistent with this order.

Both sides in this dispute have accused the other of laches. CPC claims "[d]espite good faith efforts of CPC to timely resolve this matter, Caribe has been unwilling to commit to the necessary changes of the MAZORCA trademark and package design before 1991." CPC Brief at 6. In opposition, counsel to Caribe has submitted an affidavit documenting the extensive settlement discussions that took place in this matter prior to CPC's commencement of this action.[11] Stenshoel Aff. at ¶¶ 4–17.

The affidavit submitted by Caribe shows CPC's claims to be unfounded. It appears settlement negotiations between the parties took place from July 1989 to the date of filing of the complaint in this action. It further appears Caribe was willing to phase out the use of the current label for its corn oil but that CPC refused the settlement offer solely because the parties could not agree on the time period necessary to do so. *Id.* at ¶¶ 11–14.

The affidavit also contradict's Caribe's claim that CPC has been lax in enforcing its trademark. Caribe Brief at 21–22. The record shows CPC learned of the introduction of La Mazorca corn oil in the spring of 1989 and mailed a letter dated 13 July 1989 to Caribe demanding that it cease and desist marketing La Mazorca corn oil. *Id.* at ¶ 4. There is simply no evidence that the few months between learning of a potential infringement of trademark rights and an out of court attempt to protect those rights should deprive CPC of the equitable remedy awarded by this court.

In sum, the finding that there is a similarity between the appearance of the word "Mazorca" and the word "Mazola" is sufficient to create a likelihood of confusion between CPC's corn oil and Caribe's corn oil. Accordingly, the preliminary injunction granted in CPC's favor will require

---

**11.** Counsel to Caribe states "I am aware that the content of settlement discussions is not ordinarily to be considered in evidence before the Court, but make the following statements to complete the information included in the plaintiff's Memorandum of Law." Stenshoel Aff. at ¶ 3. This affidavit is accepted for the limited purpose of contradicting assertions made by counsel for CPC to the effect that Caribe has been "unwilling" to settle this case and that this course of action was taken in bad faith. CPC Brief at 4. The affidavit is not accepted for any other purpose and is not taken to establish or rebut liability of Caribe.

that Caribe include the word "La" on its label in letters of the same size, type and color as the word "Mazorca," thereby eliminating the similarity between the brand names.

## II. *False or Deceptive Statements*

 CPC has also claimed violations section 43(a) of the Lanham Act, *as amended* 15 U.S.C. § 1125(a), on the grounds that Caribe has made a "false or misleading misrepresentation of fact, which— ... in commercial advertising or promotion, misrepresents the ... qualities ... of his or her goods." *Id.* CPC bases this claim on a sentence (in Spanish) included on the reverse portion of the La Mazorca corn oil package which, according to CPC, reads: "The 100% symbol means that it is one of the official high quality oils in the United States." CPC Brief at 12. CPC claims this statement is deceptive in that there are no "official" corn oils of the United States. It also argues the inclusion of this sentence on the La Mazorca corn oil package is unfair competition because the consuming public may believe Caribe's product has a preferred standing and is somehow better than Mazola corn oil because of its apparent governmental approval. *Id.* at 13.

To prevail on its claim, CPC need not show actual deception has occurred. *Stiffel Co. v. Westwood Lighting Group,* 658 F.Supp. 1103, 1111 (D.N.J.1987); *Toro Co. v. Textron, Inc.,* 499 F.Supp. 241, 251 (D.Del.1980). However, it must prove the conduct in question has "a tendency to deceive." *Stiffel Co.,* 658 F.Supp. at 1111; *Toro Co.,* 499 F.Supp. at 251 (citing *Parkway Baking Co. v. Freihofer Baking Co.,* 255 F.2d 641, 648 (3d Cir.1958)). There is no issue at this point, however, because Caribe has agreed to drop the sentence in question from the La Mazorca corn oil label.[12]

## *Conclusion*

For the foregoing reasons, the motion of CPC for a preliminary injunction is granted. Caribe is ordered to modify its La Mazorca corn oil label to include the word "La" in the same size, color and type and on the same line as the word "Mazorca."

---

**12.** Prior to resolution of this issue by the parties, Caribe claimed the sentence means: "The 100% symbol means that it is an oil of the official highest quality in the United States." Quiroz Aff. at ¶ 28. Caribe also claimed there is no misrepresentation because La Mazorca corn oil meets all regulations applicable to 100% pure corn oil. Caribe Brief at 25.